GUARDIAN INDUSTRIES CORPORATION v DEPARTMENT OF
TREASURY

Docket No. 211042. Submitted September 7, 2000, at Lansing. Decided
    November 14, 2000, at 9:00 A.M. Leave to appeal sought.

Guardian Industries Corporation brought an action in the Court of
    Claims against the Department of Treasury, seeking the return of
    use tax paid under protest relating to a jet aircraft. The aircraft had
    been delivered to the plaintiff in Delaware, used for more than
    ninety days after the date of purchase to travel to several states
    and European cities, and then brought into Michigan, where it was
    hangared or stored at Detroit Metropolitan Airport and flown into
    and out of several Michigan cities. The Court of Claims, Carolyn
    Stell, J., granted summary disposition in favor of the defendant.
    The plaintiff appealed.

    The Court of Appeals *held*:

    1. The Court of Claims properly denied the plaintiff's claim that
    the aircraft was exempt from taxation because it was not brought
    into the state within ninety days of the date of purchase. The pre-
    sumption provided in MCL 205.93(1); MSA 7.555(3)(1), which pro-
    vides that tangible personal property is presumed to be subject to
    use tax if brought into the state within ninety days of the date of
    purchase, is not applicable to the facts of this case because it was
    no longer operative after the expiration of the ninety-day period.
    There is no language in the statute that permits an exemption from
    taxation after the ninety-day period has expired. The plaintiff failed
    to meet its burden of establishing an express exemption beyond a
    reasonable doubt.

    2. The Court of Appeals is not bound to follow an administrative
    rule relied on by the plaintiff to support its argument that the air-
    craft is exempt from taxation. The rule, 1979 AC, R 205.135, is an
    interpretative rule with no foundation in the statute at issue and
    modifies and contradicts the language of the statute.

    3. The evidence reveals that use, storage, or consumption of the
    aircraft occurred in Michigan and the plaintiff exercised rights and
    powers of ownership over the aircraft in Michigan. The aircraft was
    subject to the use tax.

4. The levy of the use tax was consistent with the Commerce Clause, US Const, art I, § 8, cl 3, and did not violate the constitutional guarantee of equal protection.

Affirmed.

1. TAXATION — USE TAX ACT — PRESUMPTIONS.

Subsection 3(1) of the Use Tax Act provides that tangible personal property brought into Michigan within ninety days of purchase is presumed to be acquired for storage, use, or other consumption in the state and therefore is subject to use tax; the purchaser in such case who claims the property is exempt from such taxation has the burden of going forward with proofs to prove that property purchased during this specified period was not acquired for use in Michigan; the presumption is no longer operative after the expiration of the ninety-day period; there is no language in the statute that provides an exemption from taxation where tangible personal property acquired for storage, use, or other consumption in Michigan is brought into Michigan after the ninety-day period has expired (MCL 205.93[1]; MSA 7.555[3][1]).

2. TAXATION — USE TAX ACT — WORDS AND PHRASES — USE.

The Use Tax Act applies to every person in Michigan for the privilege of using, storing, or consuming tangible personal property in Michigan; the act defines "use" as the exercise of any right or power over tangible personal property incident to the ownership of that property, including transfer of the property in any transaction where possession is given (MCL 205.92[b], 205.93; MSA 7.555[2][b], 7.555[3]).

3. TAXATION — CONSTITUTIONAL LAW — COMMERCE CLAUSE.

A tax imposed by a state does not violate the Commerce Clause where the activity taxed has a substantial nexus to the taxing state and the tax is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to services provided by the state (US Const, art I, § 8, cl 3).

*Howard & Howard Attorneys, P.C.* (by *Michele L. Halloran* and *Donna M. Donovan*), for the plaintiff.

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Glenn R. White,* Assistant Attorney General, for the defendant.

Before: TALBOT, P.J., and HOOD and GAGE, JJ.

Per Curiam. Plaintiff Guardian Industries Corporation appeals as of right from an order granting summary disposition in favor of defendant Department of Treasury. We affirm.

On August 29, 1989, plaintiff purchased a Gulfstream IV Model GIV jet aircraft (hereinafter the aircraft) from Gulfstream Aerospace Corporation. The price of the aircraft was $19 million. On August 31, 1989, the aircraft was delivered to plaintiff in the state of Delaware, where plaintiff took possession and performed an inspection. That same day, plaintiff registered the aircraft with the Federal Aviation Administration, Department of Transportation (FAA). Plaintiff alleged that before August 31, 1989, and on occasions thereafter, it attempted to formally register the aircraft in Delaware, but was advised that there was no state registration requirement for an aircraft registered with the FAA. The "first use" of the aircraft consisted of a flight originating in Georgetown, Delaware, and concluding in Georgia on August 31, 1989. Between September 3, 1989, and September 10, 1989, the aircraft traveled to Ohio, Georgia, and seven European cities. On December 9, 1989, the aircraft landed in Michigan for the first time, more than ninety days after the date of purchase. After the aircraft arrived in the state of Michigan, it was hangared or stored at Detroit Metropolitan Airport and flown out of Detroit, Ypsilanti, Gaylord, and Traverse City.

Although the aircraft did not enter the state of Michigan during the first ninety days after the date of purchase, plaintiff paid use tax, under protest, in the amount of $760,000, about January 16, 1990. About February 21, 1990, plaintiff filed a petition and claim of refund for the amount of taxes paid. Defendant

denied the petition. Other than the payment of the use tax to the state of Michigan, plaintiff did not pay taxes on the purchase of the aircraft in any other state. Plaintiff filed a five-count amended complaint in the Court of Claims, seeking to recover the payment of the use tax.[1] Specifically, plaintiff alleged (1) the aircraft was not subject to tax, by statute, because of its arrival in Michigan more than ninety days after purchase, (2) administrative rules interpreting the tax code provided that the aircraft was exempt from taxation because it was properly registered in the state of purchase, Delaware, (3) the property was neither used, stored, nor consumed in the state of Michigan and not subject to the state use tax, (4) the taxation violated the Commerce Clause, US Const, art I, § 8, cl 3, and there must be an identifiable moment upon initial entry into the state to justify the tax, and (5) no rational basis existed for a system of taxation that grants favorable status to certain classes and withholds the favorable status from plaintiff. The Court of Claims denied plaintiff's motion for summary disposition and granted summary disposition in favor of defendant.[2]

---

[1] The amended complaint provides the following labels: count I, "conclusive presumption of non-taxability"; count II, "sales and use tax rule 85"; count III, "non-taxable use"; count IV, "Commerce Clause and taxable moment"; and count V, "Equal Protection of the Laws."

[2] Plaintiff initially filed a three-count complaint and moved for summary disposition of counts I and II. The Court of Claims denied plaintiff's motion for summary disposition and granted summary disposition in favor of defendant of counts I and II on June 14, 1991. The parties stipulated a stay of the proceedings on November 23, 1991, until the decision in *Kellogg Co v Dep't of Treasury*, 204 Mich App 489; 516 NW2d 108 (1994), was issued. On October 31, 1996, the case was removed from abeyance status. An amended complaint was filed on November 6, 1996. On March 31, 1998, the Court of Claims granted summary disposition of the remaining claims.

Plaintiff first argues that because the aircraft was not brought into the state within ninety days of the date of purchase, it was exempt from taxation, and the Court of Claims erred in concluding otherwise. We disagree. Our review of a decision regarding a motion for summary disposition is de novo. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). At the time of the purchase of the aircraft, subsection 3(1) of the Use Tax Act (UTA), MCL 205.93(1); MSA 7.555(3)(1), provided:

> There is levied upon and there shall be collected from every person in this state a specific tax for the privilege of using, storing, or consuming tangible personal property in this state, which tax shall be equal to 4% of the price of the property, or services specified in section 3a, and to the tax there shall be added penalties and interest where applicable as provided in this act. *For the purpose of the proper administration of this act and to prevent the evasion of the tax, it shall be presumed that tangible personal property purchased shall be subject to the tax if brought into the state within 90 days of the purchase date and shall be considered as acquired for storage, use, or other consumption in this state.* [Emphasis added.]

Issues of statutory construction present questions of law and also receive review de novo. *Oakland Co Bd of Co Rd Comm'rs v Michigan Property & Casualty Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998). The primary goal of statutory interpretation is to give effect to the intent of the Legislature. *In re MCI Telecommunications Complaint*, 460 Mich 396, 411; 596 NW2d 164 (1999). This determination is accomplished by reviewing the plain language of the statute itself. *Id.* If the statutory language is unambiguous, it is presumed that the Legislature intended the clearly expressed meaning, and judicial construction

is neither required nor permitted. *DiBenedetto v West Shore Hosp*, 461 Mich 394, 402; 605 NW2d 300 (2000). If the statutory language is ambiguous, only then may we look outside the statute to ascertain the Legislature's intent. *Id.*

The use tax complements the sales tax and was designed to govern those transactions not covered by the General Sales Tax Act.[3] *WPGP1, Inc v Dep't of Treasury*, 240 Mich App 414, 416; 612 NW2d 432 (2000). The UTA, MCL 205.91 *et seq.*; MSA 7.555(1) *et seq.*, applies to every person in this state "for the privilege of using, storing, or consuming tangible personal property in this state . . . ." MCL 205.93(1); MSA 7.555(3)(1). Tax exemptions are disfavored, and the burden of proving an entitlement to an exemption is on the party claiming the right to the exemption. *Elias Bros Restaurants, Inc v Treasury Dep't*, 452 Mich 144, 150; 549 NW2d 837 (1996). Tax exemptions are strictly construed against the taxpayer because they represent the "antithesis of tax equality . . . ." *Id.* Indeed, these rules were adopted in *Detroit v Detroit Commercial College*, 322 Mich 142, 148-149; 33 NW2d 737 (1948), when the Supreme Court, quoting 2 Cooley, Taxation (4th ed), § 672, p 1403, set forth the rules and underlying rationale of the statutory construction of tax exemptions:

> "An intention on the part of the legislature to grant an exemption from the taxing power of the State will never be implied from language which will admit of any other reasonable construction. Such an intention must be expressed in clear and unmistakable terms, or must appear by necessary implication from the language used, for it is a well-

---

[3] MCL 205.51 *et seq.*; MSA 7.521 *et seq.*

settled principle that, when a specific privilege or exemption is claimed under a statute, charter or act of incorporation, it is to be construed strictly against the property owner and in favor of the public. This principle applies with peculiar force to a claim of exemption from taxation. Exemptions are never presumed, the burden is on a claimant to establish clearly his right to exemption, and an alleged grant of exemption will be strictly construed and cannot be made out by inference or implication but must be beyond reasonable doubt. In other words, since taxation is the rule, and exemption the exception, the intention to make an exemption ought to be expressed in clear and unambiguous terms; it cannot be taken to have been intended when the language of the statute on which it depends is doubtful or uncertain; and the burden of establishing it is upon him who claims it. Moreover, if an exemption is found to exist, it must not be enlarged by construction, since the reasonable presumption is that the State has granted in express terms all it intended to grant at all, and that unless the privilege is limited to the very terms of the statute the favor would be extended beyond what was meant."

In the statute at issue, there is no language establishing an exemption from taxation. Rather, the statute merely provides that tangible personal property is *presumed* to be subject to the tax if brought into the state within ninety days of the purchase date. A presumption is merely a rule of procedure designed to supply " 'the want of facts.' " *Cichecki v Hamtramck*, 382 Mich 428, 436; 170 NW2d 58 (1969), quoting *Gibson v Dyman*, 281 Mich 137, 140; 274 NW 739 (1937). The only effect of a presumption is to cast onto the opposite party the burden of going forward with proofs. *Id.* Accordingly, the language at issue merely provided that tangible personal property brought into the state within ninety days of purchase was presumed to be acquired for storage, use, or other con-

sumption in this state. A plaintiff, in such case, has the burden of going forward with proofs to demonstrate that property purchased during this specified period was not acquired for use in this state. However, in the present case, it is undisputed that the plaintiff did not bring the aircraft into this state during the ninety-day period, but, rather, after the ninety-day period had expired. Presumptions are merely prima facie precepts or inferences from the existence or nonexistence of facts and disappear if, and when, evidence is introduced from which facts may be found. *In re Estate of Miller*, 300 Mich 703, 711; 2 NW2d 888 (1942); *Michigan Aero Club v Shelley*, 283 Mich 401, 410; 278 NW 121 (1938). Accordingly, the presumption is not applicable to the facts of this case, it having dissolved after the expiration of the ninety-day period.

Plaintiff contends that the aircraft's arrival in this state after the ninety-day period results in an exemption from taxation. We disagree. Examination of the statute reveals that the presumption was no longer operative after the expiration of the ninety-day period. There is no language contained in the statute that permits an exemption from taxation after the ninety-day period has expired. The remainder of subsection 3(1) of the UTA that does not pertain to the presumption provides:

> There is levied upon and there shall be collected from every person in this state a specific tax for the privilege of using, storing, or consuming tangible personal property in this state, which tax shall be equal to 4% of the price of the property, or services specified in section 3a, and to the tax there shall be added penalties and interest where applicable as provided in this act. [MCL 205.93(1); MSA 7.555(3)(1).]

Review of the statute reveals that there is the imposition of a tax on tangible personal property for the use, storage, or consumption of the property within this state. The plain language of the statute contains no language purporting to grant an exemption for property brought into this state ninety days after the purchase date, and judicial construction is neither permitted nor required. *DiBenedetto, supra.* Plaintiff has failed to meet its burden of establishing an express exemption beyond a reasonable doubt. *Detroit Commercial College, supra; Howard v Clinton Charter Twp*, 230 Mich App 692, 696; 584 NW2d 644 (1998). Furthermore, we note that plaintiff's proposed construction would cause property owners seeking to avoid the use tax to engage in a cost-benefit analysis before transferring purchased goods into this state. That is, if a purchaser of goods is not required to pay a sales tax in the purchasing state, the purchaser may delay any transfer of goods destined for use in this state for ninety days if the cost of storage of the goods elsewhere is significantly less than the applicable use tax.

Plaintiff next argues that the "first use" doctrine precludes application of the use tax to the purchase of the aircraft. We disagree. Plaintiff has failed to identify specific language in the statute that creates an ambiguity to the extent that judicial construction and evaluation of the legislative intent would be permitted. *In re MCI, supra.* Rather, plaintiff contends that an exemption was intended, but not expressly stated in the statutory language. Plaintiff acknowledges that legislative history is unavailable, but asserts that the legislative intent was expressed in a 1995 Report of the Special Subcommittee on State

Taxation of Interstate Commerce of the United States House of Representatives Committee on the Judiciary. Plaintiff's position is without merit. As previously noted, we give effect to the intent of the Legislature by reviewing the plain language of the statute itself. *Id.* When the statutory language is unambiguous, we must give effect to the statute as plainly expressed by the Legislature. *Id.* The statute does not contain any language providing a tax exemption for property that is brought into this state more than ninety days after the purchase date.

Furthermore, we acknowledge that in the Report of the Special Subcommittee on State Taxation of Interstate Commerce, the following summation was given regarding exemptions:

> On the basis of the presumption in the statute that tangible personalty brought into Michigan within 90 days of purchase was acquired for use in the State, it appears that the use tax applies only to use in Michigan of tangible personalty purchased for storage, use, or consumption in the State. Laws § 205.93. An exemption for prior use is implicit in the statute.
>
> Nonresidents temporarily within the State, may bring in personalty for use in Michigan without incurring the tax. Laws § 205.94(d). However, tangible personalty used in a nontransitory business activity for a period exceeding 15 days is subject to the use tax. *Ibid.* [HR Report No 565, 89th Cong, 1st Sess, Appendix Q, pp A559-A560.]

Plaintiff's reliance on this report is contrary to the rules of taxation. If the Legislature intended an exemption, it is never presumed or implicit. Rather, the exemption must be expressed in " 'clear and unmistakable terms . . . .' " *Detroit Commercial College, supra* at 149, quoting Cooley *supra,* § 672, p 1403.

Plaintiff next argues that there is an exemption allowed when the "first use" occurs outside this state. We disagree. Plaintiff again fails to cite the statute in support of its argument, but, rather, relies on the taxation report. We cannot look outside the clear, plain language of the statute to create the exemption desired by plaintiff. Plaintiff also cites an administrative rule, specifically 1979 AC, R 205.135[4], in support of its argument that the aircraft is exempt from taxation. However, interpretative rules are invalid when they conflict with the governing statute, extend or modify the statute, or have no reasonable relationship to a statutory purpose. *Clonlara, Inc v State Bd of Ed*, 442 Mich 230, 243, n 26; 501 NW2d 88 (1993), citing 1 Cooper, State Administrative Law, pp 252-259. Courts are not bound by an agency's interpretation. *Clonlara, supra* at 244, n 28, citing *Wayne Twp Metropolitan School Dist v Davila*, 969 F2d 485, 493 (CA 7, 1992). We will not validate plaintiff's reliance on the "first use" rule because it appears only in the interpretative rule, has no foundation in the statute at issue, and modifies and contradicts the language of the statute.[5]

---

[4] The rule provides, in relevant part:

All vehicles, aircraft, watercraft, and snowmobiles brought into the state of Michigan for registration purposes within 90 days after the date of purchase are taxable, unless the unit was properly registered by the purchaser in the state or country of purchase, thus signifying the intent of having purchased the unit for first use and consumption in that jurisdiction. [Rule 205.135(2).]

[5] Furthermore, we note that it appears that plaintiff attempted to comply with the "first use" interpretative rule, but was unable to do so. That is, the rule requires that the "unit" be "properly registered by the purchaser in the state . . . of purchase . . . ." Rule 205.135(2). Review of documentation submitted by defendant reveals that a tax auditor from the state of purchase, Delaware, advised plaintiff's representative Craig

Plaintiff next argues that because of the existence of genuine issues of material fact the Court of Claims improperly granted summary disposition to defendant. Specifically, plaintiff argues that the Court of Claims erroneously concluded that the aircraft was acquired for storage, use, or other consumption in Michigan, and, in any event, this question requires examination of plaintiff's intent in purchasing the aircraft. We disagree. Review of subsection 3(1) of the UTA reveals that it does not contain an element of intent. Rather, the tax is imposed on the "privilege of using, storing, or consuming tangible personal property in this state . . . ." Even if we were to conclude that the statute contains an element of intent, intent is not premised solely on the subjective opinions of plaintiff's representatives. Direct evidence is unnecessary to prove intent. *Cipri v Bellingham Frozen Foods, Inc*, 235 Mich App 1, 12; 596 NW2d 620 (1999). Intent can be inferred from the totality of the circumstances. *Id.* In fact, the most probative evidence of intent consists of objective evidence of what actually happened rather than descriptive evidence of the subjective state of mind of the actor. *Id.* In the present case, irrespective of what plaintiff's representatives intended, the aircraft at issue was brought into this state and hangar space from Detroit Metropolitan Air-

---

Radeneur, that an aircraft that is registered with the FAA is not required to "have a separate registration with the State of Delaware." Accordingly, plaintiff was technically unable to comply with this provision. In any event, we are not bound to follow the rule and note that its objective is tenuous at best. The rule concludes that registration in the state of purchase signifies the "intent" of purchasing the unit for first use and consumption in the purchasing jurisdiction. We question whether a registration process can be deemed a significant event for identifying intent. It is equally as plausible that registration in a purchasing state may occur because of beneficial tax consequences.

port was obtained to provide shelter for the aircraft. Therefore, even if we were to conclude that the statute contains an element of intent, the objective evidence reveals that use, storage, *or* consumption occurred in this state, thereby subjecting the aircraft to the use tax.

Plaintiff is only required to use, store, or consume tangible personal property in this state to be subject to the tax. MCL 205.93; MSA 7.555(3). At the time of the purchase of the aircraft, MCL 205.92(b); MSA 7.555(2)(b) defined "use" as "the exercise of a right or power over tangible personal property incident to the ownership of that property including transfer of the property in a transaction where possession is given." In *Czars, Inc v Dep't of Treasury*, 233 Mich App 632, 635-636; 593 NW2d 209 (1999), the petitioner was a Delaware corporation not engaged in any business activity. The petitioner's sole shareholder, Tahir Cheema, created the corporation to register aircraft in its name in order to shield a sister corporation, Grand Aire, from the use tax and other liabilities. The petitioner had no assets, conducted no business, and employed no workers. *Id.* The petitioner did not enter into a formal contractual agreement to acknowledge the relinquishment of control of the aircraft to Grand Aire. However, the petitioner allowed Grand Aire to fly the plane to Michigan, allowed Grand Aire to modify the aircraft *in Michigan*, allowed Grand Aire to obtain FAA approval to fly the plane, and allowed use of the aircraft in Grand Aire's cargo transport business. Despite the fact that Grand Aire was the active user of the plane, this Court held that the petitioner had failed to rebut the presumption that it exercised

rights and powers of ownership in Michigan and therefore was liable for use tax. *Id.* at 639.

Likewise in the present case, review of the flight log reveals that plaintiff exercised rights and powers of ownership over the aircraft in Michigan. *Id.*; MCL 205.92(b); MSA 7.555(2)(b).[6] The flight log indicates that Michigan essentially served as "home base" for the aircraft. Flights originated from this state and, eventually, the aircraft would return to this state, where plaintiff obtained a hangar for shelter of the aircraft. Plaintiff's attempt to characterize the aircraft's presence in this state as falling outside the scope of the statute because of its transitory nature is without merit. An exercise in semantics will not create a factual issue precluding summary disposition. *Camden v Kaufman*, 240 Mich App 389, 397; 613 NW2d 335 (2000).

Plaintiff next argues that the levy of the use tax is inconsistent with the Commerce Clause and is a violation of equal protection. We disagree. In *Kellogg Co v Dep't of Treasury*, 204 Mich App 489; 516 NW2d 108 (1994), this Court rejected the plaintiff's contention that the "taxable moment" test was viable. Instead, this Court concluded *id.* at 494-495, that, to determine whether imposition of the tax violates the Commerce Clause of the United States Constitution, US Const, art I, § 8, cl 3, the four-part test set forth in *Complete Auto Transit, Inc v Brady*, 430 US 274, 287; 97 S Ct 1076; 51 L Ed 2d 326 (1977), is the appropriate

---

[6] We note that in *Czars, supra,* the respondent had the benefit of the presumption because the aircraft was brought into Michigan within the ninety-day period. However, the lack of respondent's ability to apply the presumption in the present case does not change the result. In both cases, the exercise of the rights to the aircraft in this state served to satisfy the "use" requirement.

inquiry. To determine that a tax does not violate the Commerce Clause, one must determine that (1) the activity taxed has a substantial nexus to the taxing state, (2) the tax is fairly apportioned, (3) the tax does not discriminate against interstate commerce, and (4) the tax is fairly related to services provided by the state. *Id.*

In *Kellogg, supra,* the plaintiff, a multistate and multinational company with its headquarters in Battle Creek, Michigan, purchased two jet aircraft and took delivery in New Hampshire. Within three days of purchase, the aircraft arrived in Michigan. The aircraft were used to transport employees to destinations around the world and were registered and kept in a hangar in Battle Creek, Michigan. The defendant assessed the four percent use tax, and the plaintiff paid the tax under protest. *Kellogg, supra* at 491. The plaintiff alleged that the imposition of the use tax violated the Commerce Clause. This Court utilized the four-part test set forth in *Complete Auto* and concluded that the assessment of the use tax on the two aircraft did not violate the Commerce Clause. We held that the activity taxed had a substantial nexus to this state because the aircraft were registered in this state and kept in a hangar here, and this evidence of an identifiable exchange of services within Michigan's borders satisfied the nexus requirement. Secondly, the plaintiff had not paid use or sales tax to other states, and in any event, a credit would be given for any taxes paid to other states. Therefore, the tax was fairly apportioned. Thirdly, the use tax and sales tax rates were equal and did not discriminate against interstate commerce. Finally, the use tax on the aircraft was fairly related to the services provided by the

state, such as fire and police protection and access roads. *Id.* at 495.

Review of the *Kellogg* decision reveals that the use tax levied in the present case does not violate the Commerce Clause. Plaintiff utilized the aircraft to transport its employees and kept the aircraft in a hangar in this state. Secondly, plaintiff did not pay any tax to any other state and would have been given a credit for any payment of taxes. Thirdly, the use and sales tax were assessed at the same rate and did not discriminate against interstate commerce. Finally, the use tax was related to benefits provided by the state. Accordingly, plaintiff's Commerce Clause violation argument is without merit. Lastly, we note that plaintiff has failed to meet its burden of proof regarding the equal protection argument. *Id.* at 496-497.

Affirmed.