*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

REHAB & MOBILITY SYSTEMS, LLC,

Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

Defendant-Appellee.

FOR PUBLICATION
May 18, 2026
2:11 PM

No. 370829
Court of Claims
LC No. 23-000012-MT

Before: BORRELLO, P.J., and MARIANI and TREBILCOCK, JJ.

BORRELLO, P.J.

In this appeal by right involving a denial of a sales tax exemption after an audit, plaintiff, Rehab & Mobility Systems, LLC, challenges the Court of Claims' order granting partial summary disposition under MCR 2.116(C)(10) in favor of defendant Department of Treasury (the Department), ruling that (1) MCL 205.54a(1)(k) and MCL 205.51a(q) of the General Sales Tax Act (GSTA), MCL 205.51 *et seq*., and not Mich Admin Code, R 205.139 (Rule 89), controls the availability of a sales tax exemption for "prosthetic device[s]"; (2) the prescription medical items at issue that plaintiff sold to disabled persons are not "prosthetic device[s]" eligible for statutory sales tax exemptions; and (3) the Department properly applied plaintiff's overpayment to outstanding liabilities and plaintiff is not due a refund for a corrected negative 2017 Intent to Assess. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

Plaintiff has outlined this appeal as centering around the statutory conflict between MCL 205.54a(1)(k) and Mich Admin Code, R 205.139 (Rule 89), involving the sales tax exemption for certain medical items. The question at hand is whether certain medical items sold to individuals with disabilities pursuant to written prescriptions issued by licensed health professionals qualify for an exemption from sales tax under the General Sales Tax Act (GSTA). The parties do not appear to be in disagreement over the material facts underlying this dispute.

Plaintiff is in the business of selling prescribed medical devices to patients with various severe conditions, broadly categorized as conditions resulting in neural impairments (such as spinal cord and traumatic brain injuries), debilitating physical impairments (such as paralysis, amputations, and serious wounds), and other catastrophic conditions leading to disability. The Department conducted an audit regarding Michigan sales tax paid by the plaintiff for the tax years 2017 through 2020. It determined that certain sales during that period were subject to Michigan sales tax. Specifically, the Department concluded that plaintiff owed sales tax for sales of items generally categorized as prescription bandages, prescription incontinence devices/briefs, prescription medical gauze, prescription medical tape, prescription medical gloves, prescription wound dressing materials, prescription patient lubricants, prescription underpads, and prescription patient body wipes. Plaintiff had treated these sales as exempt from sales tax under Mich Admin Code, R 205.139 (Rule 89), MCL 205.54a(1)(k), and MCL 205.51a(q). The parties stipulated that the sales at issue had all been made pursuant to written prescriptions by licensed health providers and that the items had been sold to individuals with disabilities.

The Department issued final tax assessments indicating that plaintiff owed sales tax (with penalties and interest) of $67,678.20 for 2018, $175,279.85 for 2019, and $133,878.63 for 2020. The Department also issued a corrected intent to assess of $-107,275.18 for 2017, indicating an overpayment by plaintiff. However, the Department subsequently cancelled the intent to assess for the tax year 2017. Plaintiff made a payment of $143,487.41 to the Department on February 7, 2022. This payment was applied to plaintiff's tax liability for the 2018 and 2019 assessments at issue.

Plaintiff filed this action in the Court of Claims, challenging the tax assessed by the Department under the authority of the GSTA specifically citing MCL 205.54a(1)(k) as the statutory basis for the sales tax exemption. Plaintiff also disputes the Department's decision to cancel the intent to assess for the tax year 2017, which reflected overpayments made by plaintiff. Plaintiff requests a refund or credit for these overpayments, as indicated in the 2017 intent to assess. Additionally, plaintiff seeks the cancellation of the taxes, interest, and penalties assessed by the Department for tax years 2018 through 2020, maintaining that the sales in dispute should qualify for an exemption from sales tax.

The Court of Claims denied plaintiff's motion for summary disposition and granted the Department's partial motion for summary disposition. The court first determined that the issue of the claimed exemption from sales tax was controlled by MCL 205.54a(1)(k) rather than Rule 89 because an administrative rule could not broaden the scope of a statutory sales-tax exemption. Noting that the statute exempted the "sale of a prosthetic device," the court determined that the items at issue were not prosthetic devices for purposes of the statute and thus were not exempt from sales tax. Regarding the cancellation of the 2017 intent to assess, the Court of Claims ruled that there was no overpayment to refund because plaintiff's payment had been credited toward its 2018 and 2019 tax liability.

Following the Court of Claims' ruling on the motions for summary disposition, the parties stipulated to resolve the remaining outstanding count from plaintiff's complaint, with the Department agreeing to refund and cancel certain penalties that had been assessed against plaintiff. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo the grant or denial of a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). The trial court's summary disposition ruling was made pursuant to MCR 2.116(C)(10), which provides that summary disposition is warranted if "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A genuine issue of material fact exists if, after considering the record evidence in the light most favorable to the party opposing the motion, the record "leaves open an issue upon which reasonable minds might differ." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (quotation marks and citation omitted). This Court "review[s] de novo the interpretation and application of unambiguous statutes and administrative rules. *City of Romulus v Mich Dep't of Environmental Quality*, 260 Mich App 54, 64; 678 NW2d 444 (2003).

## III. ANALYSIS

Under the GSTA, the "sale of a prosthetic device" is exempt from sales tax. MCL 205.54a(1)(k). As relevant to the present circumstances, "prosthetic device" means:

> [A] replacement, corrective, or supportive device, other than contact lenses and dental prosthesis, dispensed pursuant to a prescription, including repair or replacement parts for that device, worn on or in the body to do 1 or more of the following:
>
> > (*i*) Artificially replace a missing portion of the body.
> >
> > (*ii*) Prevent or correct a physical deformity or malfunction of the body.
> >
> > (*iii*) Support a weak or deformed portion of the body. [MCL 205.51a(q).]

Former Administrative Rule 89 provided in relevant part during the tax years at issue as follows:

> (1) Retail sales of hearing aids and replacement parts are exempt from tax.
>
> (2) Retail sales of any apparatus, device, appliance, or equipment used to replace or substitute for any part of the human body, or used to assist the disabled person to lead a reasonably normal life, are exempt if purchased on a written prescription or order issued by a licensed health professional. Repair and replacement parts for such items are also exempt.
>
> \* \* \*
>
> (5) Examples of the kind of medical appliances that may qualify for exemption if sold pursuant to a written prescription or order are as follows:
>
> Artificial eyes

Oxygen equipment

Artificial limbs

Pacemakers

Braces

Post-surgical Bust forms

Canes

Pressure Pads

Corrective shoes

Specially built Hospital Beds

Crutches

Stoma appliances (colostomy, ileostomy, Dialysis machine, ureterostomy, catheters)

Hydraulic (patient) lifts

Trusses

Hypodermic syringes & needles

Walkers Orthotic supports (bandages, belts, Wheelchairs, and similar supplies) [Mich Admin Code, R 205.139.]

However, former Rule 89 has been rescinded, effective August 11, 2023. 2023 Mich Reg 15 (September 1, 2023), p 19. Former Rule 89 essentially mirrored a former version of MCL 205.54a(1)(h). See 1999 PA 116. In 2004, MCL 205.54a(1)(h) was amended, replacing the former language with the more succinct language now found in MCL 205.54a(1)(k) simply exempting from tax "[t]he sale of a prosthetic device, durable medical equipment, or mobility enhancing equipment." See 2004 PA 173.

Nonetheless, although Rule 89 technically remained in effect until 2023, "interpretative rules are invalid when they conflict with the governing statute, extend or modify the statute, or have no reasonable relationship to a statutory purpose," and "[c]ourts are not bound by an agency's interpretation." *Guardian Indus Corp v Dep't of Treasury*, 243 Mich App 244, 254; 621 NW2d 450 (2000). Moreover,

[t]he provisions of the rule must, of course, be construed in connection with the statute itself. In case of conflict, the latter governs. It is not within the power of the department of revenue to extend the scope of the act. For equally cogent reasons the rules and regulations of the department may not grant exemptions not

authorized by the legislature. [*Mich Sportservice v Nims*, 319 Mich 561, 566; 30 NW2d 281 (1948) (citation omitted).]

Hence, in this case, our analytical focus is on the controlling language of the statutory definition of a prosthetic device because, as the Court of Claims aptly pointed out, an administrative rule cannot broaden the scope of the statutory exemption. *Id*.; *Guardian Indus*, 243 Mich App at 254. Thus, resolution of the matter before us presents a question of statutory interpretation. "The primary objective in construing a statute is to ascertain and give effect to the Legislature's intent." *McLean v McElhaney*, 289 Mich App 592, 597-598; 798 NW2d 29 (2010). "The first step in that determination is to review the language of the statute itself." *In re MCI Telecom Complaint*, 460 Mich 396, 411; 596 NW2d 164 (1999). "If the language of the statute is clear and unambiguous, this Court must presume that the Legislature intended the meaning clearly expressed and enforce it as written; further judicial construction is neither permitted nor required." *McLean*, 289 Mich App at 598.

Furthermore, in *Guardian Indus*, 243 Mich App at 249-250, this Court explained in detail the general concept that "taxation is the rule" and exemptions are the "exception" and thus must be strictly construed:

Tax exemptions are disfavored, and the burden of proving an entitlement to an exemption is on the party claiming the right to the exemption. *Elias Bros Restaurants, Inc v Treasury Dep't*, 452 Mich 144, 150; 549 NW2d 837 (1996). Tax exemptions are strictly construed against the taxpayer because they represent the "antithesis of tax equality . . . ." *Id*. Indeed, these rules were adopted in *Detroit v Detroit Commercial College*, 322 Mich 142, 148-149; 33 NW2d 737 (1948), when the Supreme Court, quoting 2 Cooley, Taxation (4th ed), § 672, p 1403, set forth the rules and underlying rationale of the statutory construction of tax exemptions:

"An intention on the part of the legislature to grant an exemption from the taxing power of the State will never be implied from language which will admit of any other reasonable construction. Such an intention must be expressed in clear and unmistakable terms, or must appear by necessary implication from the language used, for it is a well-settled principle that, when a specific privilege or exemption is claimed under a statute, charter or act of incorporation, it is to be construed strictly against the property owner and in favor of the public. This principle applies with peculiar force to a claim of exemption from taxation. Exemptions are never presumed, the burden is on a claimant to establish clearly his right to exemption, and an alleged grant of exemption will be strictly construed and cannot be made out by inference or implication but must be beyond reasonable doubt. In other words, since taxation is the rule, and exemption the exception, the intention to make an exemption ought to be expressed in clear and unambiguous terms; it cannot be taken to have been intended when the language of the statute on which it depends is doubtful or uncertain; and the burden of establishing it is upon him who claims

it. Moreover, if an exemption is found to exist, it must not be enlarged by construction, since the reasonable presumption is that the State has granted in express terms all it intended to grant at all, and that unless the privilege is limited to the very terms of the statute the favor would be extended beyond what was meant." [Ellipsis in original.]

Beginning our statutory interpretation with the language of the statute, as previously quoted above, the term "prosthetic device" means:

[A] replacement, corrective, or supportive device, other than contact lenses and dental prosthesis, dispensed pursuant to a prescription, including repair or replacement parts for that device, worn on or in the body to do 1 or more of the following:

(*i*) Artificially replace a missing portion of the body.

(*ii*) Prevent or correct a physical deformity or malfunction of the body.

(*iii*) Support a weak or deformed portion of the body. [MCL 205.51a(q).]

Thus, to satisfy the statutory definition of a "prosthetic device," the item at issue must be:

(A) a "device";

(B) that is a "replacement, corrective, or supportive," but excluding contact lenses and dental prostheses;

(C) dispensed pursuant to a prescription;

(D) and "worn on or in the body" *to accomplish one or more of the following purposes*:

(1) "Artificially *replace* a missing portion of the body";

(2) "Prevent or *correct* a physical deformity or malfunction of the body";

(3) or "*Support* a weak or deformed portion of the body." [See MCL 205.51a(q) (emphasis added).

The statute's plain language requires that a prosthetic device replace, correct, or support a specific body part. Crucial to our resolution of the present appeal is the statutory requirement that a prosthetic device must be a "replacement, corrective, or supportive device." These terms are not specifically defined by the statute, and we therefore may consult a dictionary to assist us in ascertaining their plain meaning. *Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521, 526; 697 NW2d 895 (2005).

*Merriam-Webster's Collegiate Dictionary* defines "device" most relevantly as "a piece of equipment or a mechanism designed to serve a special purpose or perform a special function." *Merriam-Webster's Collegiate Dictionary* (11th ed). Significantly, MCL 205.51a(q) qualifies "device" with the terms "replacement, corrective, or supportive." "Replacement" means "the action or process of replacing: the state of being replaced" and "one that replaces another, esp. in a job or function." *Merriam-Webster's Collegiate Dictionary* (11th ed). In turn, "replace" means "to take the place of, esp. as a substitute or successor" and "to put something new in the place of." *Merriam-Webster's Collegiate Dictionary* (11th ed). "Corrective" means "intended to correct," and "correct," in this context, means "to alter or adjust so as to bring to some standard or required condition." *Merriam-Webster's Collegiate Dictionary* (11th ed). Finally, "supportive" means "ASSIST, HELP," as well as "to keep (something) going. *Merriam-Webster's Collegiate Dictionary* (11th ed).

Accordingly, a "replacement, corrective, or supportive device" is a piece of equipment or mechanism designed to serve the special purpose or perform the special function of taking the place of something, altering or adjusting something to bring it to standard condition, or assisting in keeping something going. However, to determine the nature of the "something" that the device must be designed to replace, correct, or support, it is necessary to consider the three purposes supplied by the statutory definition of "prosthetic device," which provide specific meaning to the terms "replacement, corrective or supportive" under the doctrine of *noscitur a sociis*. Understanding the statutory purpose, the Legislature limits exemptions to chronic conditions to ensure that the tax exemptions are applied to necessary and continuous medical needs rather than temporary or minor ailments. This approach ensures that only substantial, ongoing conditions are accommodated under the statute.

"Contextual understanding of statutes is generally grounded in the doctrine of *noscitur a sociis*: '[i]t is known from its associates.' " *Koontz v Ameritech Servs, Inc*, 466 Mich 304, 318; 645 NW2d 34 (2002) (citations omitted; alteration in original). "This doctrine stands for the principle that a word or phrase is given meaning by its context or setting." *Id*. (quotation marks and citations omitted). "As a general matter, words and clauses will not be divorced from those which precede and those which follow." *Griffith v State Farm Mut Auto Ins*, 472 Mich 521, 533; 697 NW2d 895 (2005) (quotation marks and citation omitted). "When construing a series of terms," this Court is "guided by the principle that words grouped in a list should be given related meaning." *Id*. (quotation marks and citation omitted).

Under the statute's three-part test, MCL 205.51a(q) requires the device to be "worn on or in the body" to either "(*i*) Artificially *replace* a *missing* portion of the *body*"; or "(*ii*) Prevent or *correct* a physical *deformity or malfunction* of the *body*"; or "(*iii*) *Support* a *weak or deformed portion of the body*." (emphasis added). Thus, a "prosthetic device," for purposes of the statute, is a piece of equipment or mechanism, designed to serve the special purpose or perform the special function of taking the place of a "missing portion of the body," altering or adjusting a "physical deformity or malfunction of the body" to bring it to standard condition, or assisting in keeping a "weak or deformed portion of the body" going.

"Missing" means "ABSENT" or "LOST." *Merriam-Webster's Collegiate Dictionary* (11th ed). "Malfunction" means "to function imperfectly or badly: fail to operate normally."

-7-

*Merriam-Webster's Collegiate Dictionary* (11th ed). "Deformity" means "the state of being deformed," and "deformed" means "distorted or unshapely in form: MISSHAPEN." *Merriam-Webster's Collegiate Dictionary* (11th ed). "Weak" means "lacking strength." *Merriam-Webster's Collegiate Dictionary* (11th ed). Considering these definitions together, and in striving to give these terms a related meaning in light of their context, *Griffith*, 472 Mich at 533; *Koontz*, 466 Mich at 318, it is apparent that something in the nature of an ongoing, chronic problem or condition involving a body part is implicated. The condition could range from a merely weak body part, i.e., "lacking strength," to an entirely absent body part. Moreover, the condition must be more than a temporary injury or malfunction that heals in time. The device must do more than merely treat the symptoms of the condition; it must operate as a substitute or restore the affected body part to something approaching ordinary functionality.

With this definition in mind, we may now consider the items that the plaintiff contends are exempt from sales tax because they satisfy the definition of a prosthetic device. First, in the category of "wound-covering materials," we include items such as prescription bandages, prescription medical gauze, prescription medical tape, and prescription wound dressing materials. Second, under the "absorbent products" category, we classify prescription incontinence devices/briefs and prescription underpads. Lastly, "patient care necessities" comprises prescription medical gloves, prescription patient lubricants, and prescription patient body wipes. By grouping these items into functional categories, it becomes clearer why they do not align with the statute's replacement-corrective-supportive triad.

Plaintiff in this case has failed to demonstrate that any of these items were *designed* to accomplish any of the purposes listed above. Plaintiff actually contends that it is not necessary to do so. However, plaintiff's argument ignores the plain meaning of the word "device," which requires that the mechanism be "*designed* to serve a special purpose or perform a special function." *Merriam-Webster's Collegiate Dictionary* (11th ed) (emphasis added). Considering the items at issue, all of them undoubtedly may conceivably serve a wide variety of purposes but plaintiff has not demonstrated how they were each *designed* to serve the special purpose or perform the special function of taking the place of a "missing portion of the body," altering or adjusting a "physical deformity or malfunction of the body" to bring it to standard condition, or assisting in keeping a "weak or deformed portion of the body" going. If a disposable glove is deemed a prosthetic, what item would not fall under such a definition? By framing the argument in this way, it becomes clear that plaintiff's definition stretches the statutory meaning of prosthetic devices to the point of absurdity.

Plaintiff argues that the items at issue qualify as prosthetic devices because they were medically prescribed, deemed medically necessary, and generally "support" the functioning and treatment of the affected patients. Even accepting plaintiff's claims as true, if we were to read the statutory definition as broadly as plaintiff requests, then virtually any prescribed medical item could qualify as a "prosthetic device." As previously stated, "since taxation is the rule, and exemption the exception, the intention to make an exemption ought to be expressed in clear and unambiguous terms; it cannot be taken to have been intended when the language of the statute on which it depends is doubtful or uncertain; and the burden of establishing it is upon him who claims it." *Guardian Indus*, 243 Mich App at 250. Here, plaintiff has failed to satisfy that burden of demonstrating that the items at issue clearly fall within the language of the tax exemption, and the

Court of Claims did not err by concluding that the items at issue were not exempt from tax because they were not prosthetic devices for purposes of the statute.

Finally, plaintiff asserts in a single paragraph containing no citations to legal authority that the Department committed an unlawful taking by cancelling the negative corrected assessment for tax year 2017. Because the plaintiff offers no supporting authority, this contention is forfeited. It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998) (quotation marks and citation omitted). This issue is therefore abandoned on appeal, and we decline to address it.

Affirmed. No costs are awarded to either party, a public question being involved. MCR 7.216(A)(7) and MCR 7.219(A). *City of Bay City v Bay Cnty Treasurer*, 292 Mich App 156, 172, 807 NW2d 892 (2011).

/s/ Stephen L. Borrello
/s/ Christopher M. Trebilcock