WMS GAMING, INC v DEPARTMENT OF TREASURY

Docket No. 269114. Submitted October 4, 2006, at Lansing. Decided February 27, 2007, at 9:30 a.m. Leave to appeal denied, 479 Mich ___.

WMS Gaming, Inc., brought an action in the Ingham Circuit Court against the Department of Treasury, seeking to recover use tax paid under protest. The plaintiff manufactured gaming equipment in Illinois, some of which it leased to Michigan casinos. The department assessed the use tax on the receipts from the rental of the machines. Although the plaintiff argued that it should have the option of paying use taxes calculated from the costs of the raw materials from which it manufactured the machines, the court, William E. Collette, J., granted summary disposition for the department. The plaintiff appealed.

The Court of Appeals *held*:

A manufacturer may elect to either pay a sales or use tax on the purchase price of a product's components or pay a use tax on the rental receipts from leasing the product, regardless of whether it manufactures the product in-state or out-of-state.

Reversed and remanded.

TAXATION — USE TAX — MANUFACTURED PRODUCTS — RENTAL RECEIPTS.

A manufacturer that leases its products may elect to either pay a sales or use tax on the purchase price of a product's components or pay a use tax on the rental receipts from leasing the product, regardless of whether it manufactures the product in-state or out-of-state (MCL 205.93[1]).

*Honigman Miller Schwartz and Cohn LLP* (by *Patrick R. Van Tiflin* and *Daniel L. Stanley*) for the plaintiff.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Michael R. Bell*, Assistant Attorney General, for the defendant.

Amici Curiae:

*Robert S. LaBrant* for the Michigan Chamber of Commerce.

*Dickinson Wright PLLC* (by *James H. Novis*) for International Game Technology.

Before: SAWYER, P.J., and WILDER and SERVITTO, JJ.

SAWYER, P.J. This case presents the question whether a company that manufactures a product out-of-state and then leases that product to a Michigan customer may elect to pay the use tax on the product based on the price of its component parts or whether it is required instead to remit a use tax based on the rental receipts from leasing the product. We hold that a manufacturer, without regard to whether the product is manufactured in-state or out-of-state, may elect to either pay a sales or use tax on the purchase price of the product's components or pay a use tax on the rental receipts from leasing the product.

Plaintiff is a Delaware corporation with its principal offices in the state of Illinois. Plaintiff manufactures gaming equipment used in casino gambling. Its operations include purchasing raw materials and using them in the manufacture of the gaming equipment. The entire production process occurs in Illinois. Plaintiff holds the gaming machines in Illinois for purchase or lease.

The transactions at issue in this case involve gaming machines leased by plaintiff to three Michigan casinos between September 1, 1998, and June 30, 2002. Defendant subjected them to a use-tax assessment. Plaintiff paid the tax under protest and thereafter instituted this action to recover the use tax paid. More specifically, defendant assessed the use tax on the receipts from the rental of the machines to the Michigan casinos. Plaintiff

takes the position that it should have the option of paying use taxes calculated from the costs of the raw materials from which it manufactured the machines.

The trial court granted summary disposition to defendant. We review that ruling de novo.[1] This case presents a question of statutory interpretation that we also review do novo.[2]

In ruling against plaintiff, the trial court opined in part:

> . . . Plaintiff's status as an out-of state manufacturer prevents Michigan from legally taxing its Illinois purchases. Plaintiff admitted during oral argument it brings the gaming machines into Michigan for the express purpose of leasing them to casinos. Michigan cannot tax WMS's purchase of personal tangible property because the purchase occurred in Illinois. WMS cannot elect to pay a use tax at the time of purchase unless it knows in advance exactly which products it will lease in Michigan. . . .
>
> . . . Plaintiff is not paying a use tax on tangible personal property at the time they purchase it, but rather seeking to pay the use tax only after it has brought the manufactured materials into Michigan. If Plaintiff never imports its products into Michigan, it will never be required to pay a Michigan use tax.

The trial court's opinion fundamentally misunderstands the nature of the use tax and its application in Michigan. The trial court concluded that plaintiff could not calculate the use tax on the basis of the cost of raw materials used in the manufacturing process because that would impose a tax on purchases that occurred outside the state of Michigan. But that is not what the use tax does. Rather, the use tax is a tax imposed "for the privilege of using, storing, or consuming tangible

---

[1] *Ardt v Titan Ins Co*, 233 Mich App 685, 688; 593 NW2d 215 (1999).

[2] *Id.* at 690.

personal property in this state . . . ."[3] It complements the sales tax and is designed to cover those transactions not subject to the general sales tax.[4]

The imposition of a use tax on the gaming machines is not, as the trial court concluded, a tax imposed on an out-of-state purchase. Rather, it is a tax imposed on the use of that property that was purchased out-of-state and then imported into Michigan for use. It is the use in Michigan that is taxed under the use tax, precisely because it is not subject to the sales tax. It has long been held that the tax on the use of imported goods is not a tax on out-of-state sales even if that tax is based on the purchase price in the other state.[5]

Indeed, the use tax imposes a tax on property purchased out-of-state and brought into Michigan based on the price.[6] Thus, had the Michigan casinos *purchased* the gaming machines from plaintiff in Illinois and then imported those machines into Michigan, they presumably would be subject to a use tax calculated on the purchase price, assuming that it would not be subject to the various exemptions under the act, such as that for the fact that a sales tax was paid in the foreign jurisdiction.[7]

In fact, the definition of "price" in MCL 205.92(f), as it existed during the relevant time, addressed both the definition of "price" and the fact that no use tax is due on rental receipts if the sales or use tax has already been paid on the leased property:

---

[3] MCL 205.93(1); see *Guardian Industries Corp v Dep't of Treasury*, 243 Mich App 244, 249; 621 NW2d 450 (2000).

[4] *Id.*

[5] See *Henneford v Silas Mason Co, Inc*, 300 US 577, 587; 57 S Ct 524; 81 L Ed 814 (1937).

[6] MCL 205.93(1).

[7] MCL 205.94(1)(e).

"Price" means the aggregate value in money of anything paid or delivered, or promised to be paid or delivered, by a consumer to a seller in the consummation and complete performance of the transaction by which tangible personal property or services are purchased or rented for storage, use, or other consumption in this state, without a deduction for the cost of the property sold, cost of materials used, labor or service cost, interest or discount paid, or any other expense. . . . *The tax imposed under this act shall not be computed or collected on rental receipts if the tangible personal property rented or leased has previously been subjected to a Michigan sales or use tax when purchased by the lessor.* [Emphasis added.]

Plaintiff's position is that it is taking advantage of the last sentence in the definition of "price." That is, it purchased the component parts of the gaming machines out-of-state and then imported them into Michigan. It acknowledges that it owes a use tax in that situation based on the "price" of the machines, i.e., the aggregate value of the machines after the purchase of those component parts. If plaintiff paid the use tax based on the purchase price of the machines, under the last sentence of MCL 205.92(f), there would be no use tax imposed on the rental receipts because the property leased has previously been subject to the Michigan use tax.

Defendant has acknowledged two methods of calculating the sales or use tax with regard to rental equipment. 1999 AC, R 205.132(1) provides:

A person engaged in the business of renting or leasing tangible personal property to others shall pay the Michigan sales or use tax at the time he purchases tangible personal property, or he may report and pay use tax on the rental receipts from the rental thereof. A person remitting tax on the purchase price as a purchaser-consumer or remitting tax on rental receipts as a lessor, shall follow 1 or the other methods of remitting for his entire business operation. A person remitting tax on rental receipts shall be the holder

> of a sales tax license, or a registration as is provided in the use tax act. Each month such lessor shall compute and pay use taxes on the total rentals charged.

The problem, however, has its roots in defendant's application of this rule as explained in Revenue Administrative Bulletin (RAB) 1988-39. Specifically, that RAB establishes the categories of lessor-consumer (which pays sales tax on the purchase of the property that is then leased, the rental receipts not being subject to the use tax) and lessor-retailer (which does not pay sales tax on the purchase of the property, but does pay use tax on the rental receipts). But the RAB further provides that a manufacturer that leases property that it has manufactured itself cannot be a lessor-consumer: "A manufacturer of tangible personal property who also leases the manufactured property must register and collect use tax on the rental receipts, since they have not 'purchased' the tangible personal property that they lease." Thus, it would seem that defendant would not allow plaintiff to pay tax on the purchase of the equipment as a lessor-consumer even if it were a Michigan corporation that had manufactured the gaming equipment in Michigan.

This then brings us to the application of *Int'l Business Machines v Dep't of Treasury*.[8] *Int'l Business Machines* involved the calculation of the use tax owed by the plaintiff on computers that it had manufactured itself but then consumed in the course of its business operations in Michigan rather than sold to a customer. The plaintiff took the position that it only owed tax on the cost of the raw materials and components used to manufacture the computers.[9] Defendant, on the other hand, took the position that the use tax should be based

---

[8]  220 Mich App 83; 558 NW2d 456 (1996).

[9]  *Id.* at 84.

on the manufactured cost of the computers, which included labor and overhead costs as well as that of the materials.[10] This Court, looking to the definition of "price" under MCL 205.92(f), agreed with the plaintiff. It held that the "price," and therefore the amount on which the use tax was to be calculated, was the materials cost of the property at issue.[11] The Court specifically agreed with the Court of Claims in that case that " '[p]rice is not defined in terms of value' . . . ."[12]

Defendant argues that *Int'l Business Machines* is not controlling here because it involved a company that consumed products it manufactured (i.e., IBM's employees used the computers in the course of their work rather than leasing its manufactured product to a customer). First, we are not convinced that this distinction makes a difference. It can fairly be said that plaintiff in the case at bar also consumed the products it manufactured—it is only the nature of the consumption that differs. In *Int'l Business Machines*, the company consumed the product by having its employees use it in the course of their work. In the case bar, the company consumed the product by leasing it to a customer. In both cases, the company used the product to conduct its business activities in a manner other than selling the product itself to a customer. And, in both cases, the tax situation would be the same if the companies had bought the product from a third party rather than manufacturing it itself. That is, had IBM bought the computers used in its offices, it would have paid a sales tax on the purchase[13] and there would have

---

[10] *Id.* at 84-85.

[11] *Id.* at 89.

[12] *Id.* at 87.

[13] Or, if it had purchased them out-of-state and then imported them into Michigan, it would have paid the use tax.

been no further tax liability. Similarly, had plaintiff in this case purchased the gaming machines from another manufacturer, then leased them to the casinos, it could have paid tax on the purchase and then, fitting neatly into defendant's category of lessor-consumer, it would have owed no liability on its rental receipts.[14]

And that is why the rationale of *Int'l Business Machines* applies to this case as well. If a company uses a product rather than sells it, it owes a tax on the price it paid to purchase the product. It does not owe a tax on any value it may have added to the product by fabricating the product from constituent parts that it purchased—it merely owes a tax on the purchase price of those constituent parts. It matters not whether a company uses the product by providing it as a tool to be used by its employees or uses the product by renting it to a customer.

Defendant argues that the out-of-state origins of the gaming machines presents a distinction because Michigan cannot subject them to the sales tax since plaintiff's purchase of the components parts occurred out-of-state and that Michigan cannot subject them to its use tax because the use tax only covers in-state use or consumption of tangible personal property and the use or consumption of the component parts occurred in Illinois, where the manufacturing of the gaming machines occurred. This is a red herring. This is tantamount to

---

[14] Indeed, this points out the ultimate flaw in defendant's position that a manufacturer who leases rather than sells its product cannot be a lessor-consumer. Such a manufacturer could, albeit with some expense, merely create a separate leasing company and sell the product at cost to that leasing company, upon which the sales or use tax would be paid, and then the leasing company would lease the product to the customer. Because the leasing company would not be the manufacturer, it could, under RAB 1988-39, claim the status of lessor-consumer and not pay tax on the rental receipts.

concluding that use tax is never due because of the importation of a product from out-of-state and its use in Michigan. But that would be directly contrary to MCL 205.93(1), which imposes a use tax on any tangible personal property used in Michigan without regard to origin.

First, we note that there is no indication in *Int'l Business Machines* whether the computers at issue were manufactured in Michigan or elsewhere. In any event, we fail to see any significance to the point of manufacture. Whether manufactured in Michigan or elsewhere, the question is the same: What is the "price" for sales- or use-tax purposes? And *Int'l Business Machines* answered that question.

Ultimately, the analysis becomes fairly straightforward: (1) Plaintiff imported gaming machines purchased out-of-state for use in Michigan; (2) plaintiff may choose to pay the applicable use tax on those machines based on the price paid for the component parts, and thereafter owe no use tax on the rental receipts for leasing those gaming machines in Michigan, or (3) plaintiff may opt to pay no use tax on the machines themselves and then remit use tax on the rental receipts.

In light of this holding, we need not address the constitutional issue raised by plaintiff.

The decision of the trial court is reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiff may tax costs.