*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BED BATH & BEYOND, INC.,

      Plaintiff-Appellee,

V

DEPARTMENT OF TREASURY,

      Defendant-Appellant.

UNPUBLISHED
July 8, 2021

Nos. 352088 and 352667
Court of Claims
LC No. 18-000220-MT

Before: MARKEY, P.J., and SHAPIRO and GADOLA, JJ.

MARKEY, P.J. (*dissenting in part, concurring in part*).

Because I would reverse in part and affirm in part the order of the Court of Claims granting summary disposition in favor of plaintiff, I respectfully dissent in part and concur in part.

Under the Michigan Use Tax Act (UTA), MCL 205.91 *et seq.*, "[t]here is levied upon and there shall be collected from every person in this state a specific tax, including both the local community stabilization share and the state share, for the privilege of *using*, storing, or consuming tangible personal property in this state at a total combined rate equal to 6% of the price of the property . . . ." MCL 205.93(1) (emphasis added). The UTA defines the term "use" to "mean[] the exercise of a right or power over tangible personal property incident to the ownership of that property including transfer of the property in a transaction where possession is given." MCL 205.92(b).

In my view, the difficulty in this case stems from the nature of the tangible personal property at issue—advertising materials. Without yet taking into consideration the statutory definition of "use," the true "use" of advertising materials, such as those involved in this case, is two-fold. First, advertising materials are *used* by the individual or company selling the products or services displayed in a particular advertisement as a means to convince a consumer to purchase the products or services or to otherwise patronize the business. This "use" of advertising materials does not actually occur until the materials reach a consumer. Second, once the advertising materials reach the home of a consumer, the consumer *uses* the materials to make discretionary shopping decisions. The advertising materials are being "used" by the advertiser *and* the person to whom the advertisement is delivered. The advertiser's "use" of advertising materials

necessarily takes place when the materials are no longer in the control of the advertiser. The process of delivering or distributing advertising materials to a consumer does not actually entail the "use" of the materials; rather, it is simply the mechanism that enables the two types of uses of advertising materials to take place. "Tangible personal property" is defined as "personal property that can be seen, weighed, measured, felt, or touched or that is in any other manner perceptible to the senses and includes electricity, water, gas, steam, and prewritten computer software." MCL 205.92(k). Although advertising materials technically qualify as tangible personal property, determining what constitutes "use" of such materials can be challenging, especially compared to items like electricity, water, gas, steam, and software, where use is easily discernible.

Of course, my personal observations must give way to the statutory definition of "use." Therefore, the question is whether plaintiff exercised a right or power over the advertising materials in Michigan incident to the ownership of the materials. See MCL 205.92(b). Stated otherwise, the issue is whether plaintiff had "some level of control over" the advertising materials in Michigan, *Auto-Owners Ins Co v Dep't of Treasury*, 313 Mich App 56, 70; 880 NW2d 337 (2015), or whether there were some "indicia of control" by plaintiff over the materials in Michigan, *Ameritech Publishing, Inc v Dep't of Treasury*, 281 Mich App 132, 138-139; 761 NW2d 470 (2008); *Sharper Image Corp v Dep't of Treasury*, 216 Mich App 698, 704; 550 NW2d 596 (1996).[1] In *WMS Gaming, Inc v Dep't of Treasury*, 274 Mich App 440, 443; 733 NW2d 97 (2007), this Court explained:

> The imposition of a use tax . . . is not, as the trial court concluded, a tax imposed on an out-of-state purchase. Rather, it is a tax imposed on the use of that property that was purchased out-of-state and then imported into Michigan for use. It is the use in Michigan that is taxed under the use tax, precisely because it is not subject to the sales tax. It has long been held that the tax on the use of imported goods is not a tax on out-of-state sales even if that tax is based on the purchase price in the other state.

With regard to the statutory definition of "use" in the UTA, the Michigan Supreme Court in *NACG Leasing v Dep't of Treasury*, 495 Mich 26, 29 n 9; 843 NW2d 891 (2014), observed that "[i]mportant rights flowing from property ownership include the right to exclusive possession, the right to personal use and enjoyment, the right to manage its use by others, and the right to income derived from the property." (Quotation marks and citation omitted.)

Here, plaintiff entered into a contract with Harte Hanks for direct mail services. Harte Hanks had the contractual obligation to prepare and deliver the advertising materials, but it was according to plaintiff's ad campaign schedule. And plaintiff specified the Michigan residents to whom it wanted the advertising materials delivered by providing its customer mailing list to Harte Hanks. Furthermore, the contract required Harte Hanks to address and then mail plaintiff's advertising materials to the identified Michigan residents using the USPS within a timeframe specified by plaintiff. To fulfill its contractual responsibility to mail plaintiff's advertising

---

[1] I agree with the majority's summarization of the opinions in *Ameritech Publishing* and *Sharper Image*.

-2-

materials, Harte Hanks was granted some discretion to optimize efficiencies on the basis of its mail expertise. To this end, Harte Hanks packaged the materials in bulk at its Pennsylvania plant and, for an agreed upon rate, transported them via freight to USPS locations in Michigan where the materials entered the mail stream. Afterward, Harte Hanks provided plaintiff with a distribution report so that plaintiff could determine when its advertising materials reached its customers in relation to the materials' expiration date. Under these circumstances, plaintiff plainly exercised a right incident to its ownership of the advertising materials by contracting with Harte Hanks to have the materials mailed to Michigan residents within particular parameters specified by plaintiff. Nothing in the plain and unambiguous language of MCL 205.92(b)—the statutory definition of "use"—precludes a party's exercise of a right over property incident to the ownership of the property through contractual arrangements pursuant to which another person or entity engages in the physical distribution of the property as dictated by the underlying contract.

While I conclude that no genuine issue of material fact exists that plaintiff exercised a right incident to ownership by contractually managing Harte Hanks's delivery of plaintiff's advertising materials, I find the closer, more relevant, question is whether plaintiff exercised this right *in Michigan*. Much of Harte Hanks's preparation of materials to meet plaintiff's specifications occurred outside Michigan at Harte Hanks's Pennsylvania plant. It was only after those advertising materials were scheduled for delivery and addressed to Michigan residents at plaintiff's direction that the materials entered Michigan on Harte Hanks's trucks for delivery to Michigan USPS centers and facilities where they would enter the mail stream. Yet, by contracting with Harte Hanks for delivery and allowing Harte Hanks the discretion to optimize mailing efficiencies based on its expertise, plaintiff caused the materials to enter Michigan via freight, thereby controlling, effectively, this aspect of delivery. Indeed, absent plaintiff's direction to deliver the advertising materials at a particular time to certain Michigan residents at an agreed upon delivery rate with Harte Hanks, plaintiff's materials would not have entered state boundaries. At the point in time when Harte Hanks was transporting the advertising materials by freight to USPS facilities and centers in Michigan, they remained the property and within the ultimate control of plaintiff.[2] Accordingly, with respect to the advertising materials that were delivered to Michigan USPS facilities and centers, I conclude that plaintiff used those materials in Michigan; consequently, plaintiff owes use tax under the UTA. I would reverse and remand the case for entry of judgment in favor of defendant, but with one caveat. There was evidence that with regard to smaller campaigns Harte Hanks delivered advertising materials to a USPS facility close to its operations in Pennsylvania. To the degree that the USPS facility was located outside of Michigan, the advertising materials were not used by plaintiff in Michigan. No use tax should be imposed on those materials under the reasoning in *Sharper Image*, so I would affirm the Court of Claims' ruling to that extent. I would also remand the case for a determination of any deduction from the use tax owing by plaintiff as associated with advertising materials not delivered by Harte Hanks to a Michigan USPS facility or center.

---

[2] I have no doubt that if for whatever reason plaintiff contacted Harte Hanks to stop shipment while a truck full of advertising materials was rolling through Michigan, Harte Hanks would honor the request and halt delivery.

Plaintiff contends that it never exercised any control of the advertising materials in Michigan because it forfeited all control upon sending the designs to a third-party printer and, other than specifying the general timeframe for delivery, had no control over delivery. According to plaintiff, this Court should give deference to the Court of Claims's "evidentiary finding" that plaintiff did not control any aspect of delivery and that plaintiff's control of the materials ended before they reached our state.

As a preliminary matter, I note that this Court owes no deference to alleged factual findings made by the Court of Claims on a motion for summary disposition. In fact, a trial court is not permitted to resolve factual disputes for purposes of summary disposition under MCR 2.116(C)(10). *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). The lower court's role is simply to review the documentary evidence to determine if a genuine issue of material fact exists. *Id.* And this is the same standard that applies to our examination on *de novo* review. *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994). De novo review of an issue means that the issue is reviewed independently with no deference given to the court below. *In re Ferranti*, 504 Mich 1, 14; 934 NW2d 610 (2019).

With respect to the substantive merits of plaintiff's argument, I find the record simply does not support plaintiff's position that it relinquished all control of the advertising materials during delivery. Plaintiff contracted for the delivery of the materials in Michigan but retained a certain indicia of control over the advertising materials through its contract with Harte Hanks as the property was transported into Michigan to USPS centers and facilities. In asserting otherwise, plaintiff mischaracterizes the record or otherwise omits key facts. For example, plaintiff ignores the fact that the advertising materials were transported via freight into Michigan at a contracted rate,[3] misstates that Harte Hanks owned the list of customers to whom plaintiff's advertising materials were addressed, and inaccurately suggests that Harte Hanks controlled the timing of delivery by omitting the fact that plaintiff had the materials produced and delivered consistent with its annual schedule.

Plaintiff argues that this case is akin to *Sharper Image* and distinguishable from *Ameritech Publishing*. In *Sharper Image*, the plaintiff was not subject to use tax for catalogs it mailed to Michigan residents from a Nebraska USPS facility. *Sharper Image*, 216 Mich App at 702-704. The Court concluded that the plaintiff did not use the catalogs in Michigan because the plaintiff's control over the materials ended when the catalogs were delivered to the Nebraska USPS facility. *Id*. at 702. In this case, plaintiff, by way of contract with Harte Hanks, transported its advertising materials into Michigan by freight. Unlike the plaintiff in *Sharper Image*, plaintiff here effectively controlled and thus used the advertising materials in Michigan until the materials entered the USPS mail stream at USPS facilities and centers located in Michigan.

Likewise, in *Ameritech Publishing*, 218 Mich App at 134, the plaintiff entered into carrier and distribution contracts for the delivery of its telephone directories in Michigan. While all distribution activities took place in Michigan, and the plaintiff's contractual directions were more detailed, *id*. at 133-135, 143-144, these facts do not undermine my conclusion that plaintiff in this

---

[3] I again note my one caveat concerning advertising materials transported by Harte Hanks to USPS facilities outside of Michigan.

case also controlled its property in Michigan under its contract with Harte Hanks, thereby implicating imposition of the use tax.

I would reverse and remand for entry of judgment in favor of defendant, except with respect to any advertising materials that Harte Hanks shipped to USPS sites outside the State of Michigan even though those materials were addressed to Michigan homes. Accordingly, I respectfully dissent in part and concur in part.


/s/ Jane E. Markey