# STATE OF MICHIGAN

# COURT OF APPEALS

MIDAMERICAN ENERGY COMPANY, and
AT&T MOBILITY, LCC,

       Plaintiffs-Appellants,

v

DEPARTMENT OF TREASURY,

       Defendant-Appellee.

FOR PUBLICATION
December 4, 2014
9:00 a.m.

No. 316902
Court of Claims
LC No. 12-000005-MT

---

DETROIT EDISON COMPANY and AT&T
MOBILITY, LLC,

       Plaintiffs-Appellants,

v

DEPARTMENT OF TREASURY,

       Defendant-Appellee.

No. 317033
Court of Claims
LC No. 12-000006-MT

---

DETROIT EDISON COMPANY and MICHIGAN
BELL TELEPHONE COMPANY,

       Plaintiffs-Appellants,

v

DEPARTMENT OF TREASURY,

       Defendant-Appellee.

No. 317034
Court of Claims
LC No. 12-000007-MT

---

CONSUMERS ENERGY COMPANY and AT&T
MOBILITY, INC.,

       Plaintiffs-Appellants,

| | |
|---|---|
| v | No. 317035 |
| | Court of Claims |
| DEPARTMENT OF TREASURY, | LC No. 12-000008-MT |
| | |
| Defendant-Appellee. | |

CONSUMERS ENERGY COMPANY and
MICHIGAN BELL TELEPHONE COMPANY,

Plaintiffs-Appellants,

| | |
|---|---|
| v | No. 317037 |
| | Court of Claims |
| DEPARTMENT OF TREASURY, | LC No. 12-000009-MT |
| | |
| Defendant-Appellee. | |

Before: SAAD, P.J., and O'CONNELL and MURRAY, JJ.

SAAD, P.J.

## I. NATURE OF THE CASE

This tax appeal involves the applicability of the industrial processing exemption[1] to the Sales Tax Act.[2] In sum, the industrial processing exemption to the sales tax, MCL 205.54t, can only be granted to taxpayers engaged in "industrial processing." A taxpayer is only engaged in "industrial processing" when it: (1) modifies "tangible personal property"[3] for sale[4] to consumers; or (2) uses "tangible personal property" to produce wholly new "tangible personal property" for sale to consumers. For the taxpayer to receive the industrial processing exemption, then, whatever the taxpayer eventually sells to consumers must be "tangible personal property." Taxpayers that use "tangible personal property" to produce some other product that *is not*

---

[1] MCL 205.54t.

[2] MCL 205.51 *et seq*.

[3] MCL 205.51a(q).

[4] More precisely, the "sale, lease, or rental" of "tangible personal property" to consumers. See MCL 205.51(1)(b). Because plaintiffs only make mention of the *sale* of telecommunications services to consumers, we refer only to the "sale" of "tangible personal property" to consumers throughout the opinion.

"tangible personal property" *are not* eligible for the industrial processing exemption under MCL 205.54t

Here, plaintiffs[5] argue that their purchase of electricity is eligible for the industrial processing exemption to the sales tax. They assert that they purchase electricity (which is tangible personal property) and either: (1) modify the electricity into telecommunications signals, which are another form of electricity and thus, a form of tangible personal property, and sell the signals to consumers; or (2) use the electricity to create telecommunications signals, which are a *new form* of tangible personal property in their own right. Accordingly, because plaintiffs' activity supposedly results in the ultimate sale of "tangible personal property," in the form of telecommunications signals to consumers, plaintiffs argue that their purchase of electricity is eligible for the industrial processing exemption.

This argument is unconvincing for a simple reason: telecommunications signals are not "tangible personal property." Plaintiffs' purchase of electricity to create telecommunications signals is thus not eligible for the industrial processing exemption to the sales tax. The Court of Claims therefore properly granted defendant Department of Treasury[6] summary disposition, and its holding is affirmed.

## II. FACTS AND PROCEDURAL HISTORY

The plaintiffs in this case are: (1) electricity providers; and (2) telecommunications companies that purchase electricity from the electricity providers. Plaintiffs brought this action in the Court of Claims, and argued that the telecommunications companies' purchase of electricity should be exempt from the sales tax under the industrial processing exemption, MCL 205.54t. Again, to qualify for the industrial processing exemption, the taxpayer's activity must result in the sale of "tangible personal property" to consumers.[7] The statute defines "tangible personal property" to mean:

> personal property that can be seen, weighed, measured, felt, or touched, or that is
> in any other manner perceptible to the senses and includes electricity, water, gas,
> steam, and prewritten computer software. [MCL 205.51a(q).]

Plaintiffs asserted that the telecommunications signals they produced were "tangible personal property" in two ways: (1) as electricity; and (2) as property that can be "seen, weighed, measured, felt, or touched, or that is in any other manner perceptible to the senses." As such, plaintiffs stated that their activities qualified as "industrial processing" under MCL 205.54t(7)(a) because: (1) they purchased "tangible personal property" (electricity) and sold it in modified

---

[5] Throughout the opinion, plaintiffs are referred to either as "plaintiffs" or "the taxpayers."

[6] Throughout the opinion, defendant is referred to as "defendant" or "the Department."

[7] "Industrial processing" is defined at MCL 205.54t(7)(a). The precise definitional and statutory framework of the industrial processing exemption under MCL 205.54t is highly complex, and is discussed in detail later in the opinion.

form (telecommunications signals) to consumers; and (2) they purchased "tangible personal property" (electricity), used it to produce wholly new "tangible personal property" (telecommunications signals), and sold the wholly new "tangible personal property" (telecommunications signals) to consumers.

Defendant argued that plaintiffs were not eligible for the industrial processing exemption under MCL 205.54t because plaintiffs were not engaged in "industrial processing." Telecommunications signals, the Department claimed, are not "tangible personal property," because they are: (1) not electricity; and (2) cannot be "seen, weighed, measured, felt, or touched, or that is in any other manner perceptible to the senses." Because plaintiffs did not sell "tangible personal property" to consumers, they could not be engaged in "industrial processing" pursuant to MCL 205.54t(7)(a), and thus could not be eligible for the industrial processing exemption under MCL 205.54t. Defendant also claimed that certain statutory definitions under the Use Tax Act, MCL 205.91 *et seq*., militated against classifying the telecommunications signals produced by plaintiffs as "tangible personal property" under the Sales Tax Act's industrial processing exemption.[8]

The Court of Claims heard exhaustive expert testimony from both sides on whether the telecommunications signals produced by plaintiffs are "tangible personal property," either in that they are a modified form of electricity, or are something that can be "seen, weighed, measured, felt, or touched, or [are] is in any other manner perceptible to the senses."

In a thorough written opinion, the Court of Claims rejected plaintiffs' arguments and held that plaintiffs were not eligible for the industrial processing exemption. Specifically, it ruled that the telecommunications signals produced by plaintiffs are not "tangible personal property," in that they are not electricity, nor are they something that can be "seen, weighed, measured, felt, or touched, or that is in any other manner perceptible to the senses." Because the telecommunications signals are not "tangible personal property" sold to consumers, the court ruled that plaintiffs were not engaged in industrial processing pursuant to MCL 205.54t(7)(a), and thus were not eligible for the industrial processing exemption under MCL 205.54t. Accordingly, the trial court granted defendant's request for summary disposition under MCR 2.116(C)(10).

---

[8] Specifically, defendant pointed to MCL 205.93a, which, among other things, governs tax on the use of "intrastate telecommunications services." The statute's definitional section defines "telecommunications service" as "the electronic transmission, conveyance, or routing of voice, data, audio, video, or any other information or signals to a point," which defendant argues includes the telecommunications signals at issue. MCL 205.93a(5)(s). The definition further goes on to note that the term "telecommunications service does not include any of the following . . . tangible personal property." MCL 205.93a(5)(s)(*iii*). Defendant argued that the Legislature's use of this specific terminology and language in this section of the Use Tax Act indicates that it did not intend for the telecommunications signals at issue to be classified as "tangible personal property" subject for the industrial processing exemption under the Sales Tax Act.

On appeal, plaintiffs argue that the Court of Claims erred when it held, as a matter of law, that they are ineligible for the industrial processing exemption because: (1) telecommunications signals are "tangible personal property," in that they are both electricity and something that can be "seen, weighed, measured, felt, or touched, or that is in any other manner perceptible to the senses"; and (2) plaintiffs are therefore engaged in "industrial processing," in the use of electricity to produce telecommunications signals for sale to consumers, and thus eligible for the industrial processing exemption under MCL 205.54t.[9]

## III. STANDARD OF REVIEW

A trial court's decision to grant summary disposition is reviewed de novo. *Malpass v Dep't of Treasury*, 494 Mich 237, 245; 833 NW2d 272 (2013). A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint, and we consider "the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . in the light most favorable to the party opposing the motion." *Nastal v Henderson & Assoc Investigations, Inc*, 471 Mich 712, 721; 691 NW2d 1 (2005). "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id*.

Matters of statutory interpretation are reviewed de novo. *Malpass*, 494 Mich at 245. When it interprets statutes, a court's "primary task is to discern and give effect to the intent of the Legislature." *Ford Motor Co v Dep't of Treasury*, 496 Mich 382, 389; 852 NW2d 786 (2014) (punctuation marks omitted). The first step in that process is to examine "the language of the statute itself. If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written." *Id*. (citations and quotation marks omitted).

"Statutory interpretation requires an holistic approach. A provision that may seem ambiguous in isolation often is clarified by the remainder of the statutory scheme." *SMK, LLC v Dep't of Treasury*, 298 Mich App 302, 309; 826 NW2d 186 (2012) (citations omitted), aff'd in part and rev'd in part by *Fradco, Inc v Dep't of Treasury*, 495 Mich 104, 118; 845 NW2d 81 (2014). "When construing statutory language, the court must read the statute as a whole and in its grammatical context, giving each and every word its plain and ordinary meaning unless otherwise defined." *Book-Gilbert v Greenleaf*, 302 Mich App 538, 541; 840 NW2d 743 (2013). Doing so requires us to "avoid a construction that would render any part of a statute surplusage or nugatory, and we must consider both the plain meaning of the critical words or phrases as well as their placement and purpose in the statutory scheme." *People v Redden*, 290 Mich App 65, 76–77; 799 NW2d 184 (2010). And "[a] general principle of statutory construction is the doctrine of *expressio unius* . . . which means that the express mention of one thing implies the

---

[9] Plaintiffs, most likely in response to defendant's use tax argument at trial, also claim that their activity is exempt from the industrial processing exemption to the use tax pursuant to MCL 205.94*o*. Because plaintiffs did not raise this issue at trial, it is unpreserved, and we need not address it. *Booth Newspapers, Inc v Univ of Mich Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993).

exclusion of another." *Wayne Co v Wayne Co Retirement Comm*, 267 Mich App 230, 248; 704 NW2d 117 (2005) (emphasis in original).

## IV.  ANALYSIS

### A.  THE SALES TAX ACT

The Sales Tax Act ("the Act"), MCL 205.51 *et seq*., imposes a 6 percent tax on "all persons"[10] who sell "tangible personal property" "at retail."  MCL 205.52(1).  The Act defines "tangible personal property" as

> personal property that can be seen, weighed, measured, felt, or touched, or that is in any other manner perceptible to the senses and includes electricity, water, gas, steam, and prewritten computer software.  [MCL 205.51a(q).]

"Sale at retail" means:

> a sale, lease, or rental of *tangible personal property* for any purpose other than for resale, sublease, or subrent.  [MCL 205.51(1)(b) (emphasis added).]

Accordingly, for an item to be "[sold] at retail" under the Act, the item must be "tangible personal property" as defined in MCL 205.51a(q).  In other words, whenever the term "sale at retail" is mentioned in the Act, it refers to the "sale, lease, or rental of tangible personal property."

### B.  THE INDUSTRIAL PROCESSING EXEMPTION

Much of the Act consists of statutory exemptions to the general tax levied by MCL 205.52(1).  Among other things, the exemptions are "the product of a targeted legislative effort to avoid double taxation of the end product offered for retail sale or, in other terms, to avoid pyramiding the use and sales tax."  *Elias Bros Restaurants v Dep't of Treasury*, 452 Mich 144, 152; 549 NW2d 837 (1996) (quotation marks omitted).  "Because tax exemptions are disfavored, the burden of proving entitlement to an exemption" rests on the party seeking the exemption.  *Id*. at 150.  Any tax exemptions that are applicable to a specific taxpayer are strictly construed against the taxpayer.  *Guardian Indus Corp v Dep't of Treasury*, 243 Mich App 244, 249; 621 NW2d 450 (2000).

---

[10] The Act defines "person" as:

> an individual, firm, partnership, joint venture, association, social club, fraternal organization, municipal or private corporation whether organized for profit or not, company, estate, trust, receiver, trustee, syndicate, the United States, this state, county, or any other group or combination acting as a unit, and includes the plural as well as the singular number, unless the intention to give a more limited meaning is disclosed by the context.  [MCL 205.51(1)(a).]

One such exemption is the exemption for "industrial processors," which is codified at MCL 205.54t(1)(a). This section creates a tax exemption for "the sale of tangible personal property"[11] to "[a]n industrial processor for use or consumption in industrial processing." MCL 205.54t(1)(a).

As used in the exemption, an "industrial processor" is "a person who performs the activity of converting or conditioning tangible personal property for ultimate *sale at retail* or use in the manufacturing of a product to be ultimately *sold at retail*." MCL 205.54t(7)(b) (emphasis added). "Industrial processing" means

> the activity of converting or conditioning tangible personal property by changing the form, composition, quality, combination, or character of the *property for ultimate sale at retail* or for use in the manufacturing of a *product to be ultimately sold at retail*. Industrial processing begins when tangible personal property begins movement from raw materials storage to begin industrial processing and ends when finished goods first come to rest in finished goods inventory storage. [MCL 205.54t(7)(a) (emphasis added).]

Accordingly, the definition of "tangible personal property" is doubly important for any party that seeks to use the industrial processing exemption. This is because, by definition, "industrial processing" involves either: (1) the modification of "tangible personal property" for ultimate sale of the modified property at retail; or (2) the use of "tangible personal property" in manufacturing "a product to be ultimately *sold at retail*"—i.e., the use of "tangible personal property" in manufacturing "tangible personal property." Again, "[sale] at retail" is defined as "a sale, lease, or rental of *tangible personal property* for any purpose other than for resale, sublease, or subrent. MCL 205.51(1)(b) (emphasis added).[12]

Therefore, for a taxpayer to be engaged in "industrial processing" and thus be eligible for the industrial processing exemption to the sales tax, the taxpayer must use "tangible personal property" to produce either a (1) modified or (2) new form of "tangible personal property" that will be sold to consumers. In other words, to qualify for the industrial processing exemption, the taxpayer must ultimately sell consumers "tangible personal property." Taxpayers that use "tangible personal property" to produce some other product that *is not* "tangible personal property," then, *are not* eligible for the industrial processing exemption under MCL 205.54t.[13]

---

[11] The definition of "tangible personal property" used in MCL 205.54t(1)(a) is the same as the definition supplied by the Act in MCL 205.51a(q). See *Manuel v Gill*, 481 Mich 637, 650; 753 NW2d 48 (2008) (holding that a court interprets a statute's "words in their context and with a view to their place in the overall statutory scheme") (citations omitted).

[12] The definition of "[sold] at retail" used in MCL 205.54t(7)(a) and MCL 205.54t(7)(b) is the same as the definition supplied by the Act in MCL 205.51(1)(b). See *Manuel*, 481 Mich at 650.

[13] We note that the nested and intricate definitional system used throughout the Sales Tax Act and its industrial processing exemption is very similar to the definitional system contained in the

## C. APPLICATION

### 1. PLAINTIFFS' ARGUMENT

Here, the taxpayers claim their purchase of electricity is exempt from the sales tax under the industrial processing exemption. Their argument is based on a logic chain consistent with the integrated definitional framework of MCL 205.51 and MCL 205.54t described above.

Again, to be eligible for the industrial processing exemption under MCL 205.54t, a taxpayer must be engaged in "industrial processing." Plaintiffs say they are engaged in "industrial processing" for two reasons. First, they claim that they convert and modify electricity, which is tangible personal property, into telecommunications signals, which they assert are another form of electricity that is thus also tangible personal property. Second, in the event we reject the argument that telecommunications signals are a modified form of electricity, plaintiffs claim the telecommunications signals "can be seen, weighed, measured, felt, or touched, or that is in any other manner perceptible to the senses,"[14] making the telecommunications signals "tangible personal property" in their own right.

Because plaintiffs used tangible personal property (electricity) to produce (1) a modified form of tangible personal property (the telecommunications signals as electricity) or (2) a new form of tangible personal property (the telecommunications signals), and sell the modified or new forms of tangible personal property to consumers, they claim they are engaged in "industrial processing" pursuant to MCL 205.54t(7)(a). Because they are engaged in "industrial processing," they are an "industrial processor" per MCL 205.54t(7)(b). And because they are an "industrial processor" engaged in "industrial processing," their purchase of electricity is eligible for the industrial processing exemption to the sales tax under MCL 205.54t.

Plaintiffs' argument that they are eligible for the industrial processing exemption, then, is entirely dependent on whether telecommunications signals can be classified as "tangible personal property": (1) as a form of "electricity"; or (2) in their own right, as something that "can be seen, weighed, measured, felt, or touched, or that is in any other manner perceptible to the senses." Plaintiffs presented exhaustive expert testimony to support both propositions at trial, but their arguments are unconvincing.

### 2. TELECOMMUNICATIONS SIGNALS ARE NOT ELECTRICITY

Both parties submitted evidence to the Court of Claims that telecommunications signals take different forms as they transfer data from one source to another. Among other things, these

---

industrial processing exemption to the *Use Tax* (MCL 205.94*o*). MCL 205.94*o* makes the definition of "tangible personal property" doubly important as well, because, under the Use Tax, the industrial processing exemption can only be granted to "tangible personal property" that is engaged in the "converting or conditioning" of "tangible personal property." MCL 205.94*o*(7)(a). See also *Detroit Edison Co v Dep't of Treasury*, 303 Mich App 612, 625 n 4; 844 NW2d 198 (2014), lv gtd 853 NW2d 380 (2014).

[14] MCL 205.51a(q).

forms include: alternating current (AC) and direct current (DC) electricity, ultraviolet light, radio waves, and digital signals. Accordingly, the telecommunications signals are a different type of energy at each stage of the transmission process. Though the signals are electricity at some stages of the transmission process, they are not electricity at every stage of the transmission process.

It is illogical to suggest that the word "electricity" encompasses matter that is manifestly *not* electricity at various stages of its transmission. The plain language of the statutory definition mandates this common sense definition of the word "electricity." Again, the Sales Tax Act defines "tangible personal property" as:

> personal property that can be seen, weighed, measured, felt, or touched, or that is in any other manner perceptible to the senses and includes electricity, water, gas, steam, and prewritten computer software. [MCL 205.51a(q).]

As the Court of Claims noted, "steam" is merely "water" in a different form. The presence of both terms in the definition demonstrates that plaintiffs' reading of MCL 205.51a(q) is incorrect, because the Legislature specifically included two different forms of the same matter in the definition. Under plaintiffs' reading—which reads "electricity" to include any matter that is also electricity at some point in its existence—it would be sufficient to include the term "water," because that term would encompass water in all its forms, including its evaporated form ("steam"). This approach would render the term "steam" nugatory, which contravenes basic principles of statutory interpretation.[15] Because the Legislature did not write the statute in this way, it is clear that the Legislature did not intend the term "electricity" to encompass "telecommunications signals."

## 3. TELECOMMUNICATIONS SIGNALS ARE NOT TANGIBLE PERSONAL PROPERTY

Plaintiffs' argument that telecommunications signals are "tangible personal property" in their own right is also unavailing. Both the plain meaning of the statutory definition and common sense militate against classifying "telecommunications signals" as "tangible personal property."

The first indication that something is amiss with plaintiffs' argument is that the statutory definition of "tangible personal property" does not include the term "telecommunications signal."[16] This bodes ill for plaintiffs, as we strictly construe all tax exemptions,[17] and the term that is required for plaintiffs to receive the industrial processing exemption is absent from MCL 205.51a(q). And not only is it absent—it is conspicuously absent, because the definition itself

---

[15] *Redden*, 290 Mich App at 76–77.

[16] "If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written." *Ford*, 496 Mich at 389 (citations and quotation marks omitted).

[17] *Guardian Indus*, 243 Mich App at 249.

includes a number of very specific terms ("electricity," "water," "gas," "steam," and "prewritten consumer software"), while nowhere mentioning the phrase "telecommunications signal." Again, the "express mention of one thing [in a statute] implies the exclusion of another." *Wayne Co*, 267 Mich App at 248. The absence of the term "telecommunications signal" from MCL 205.51a(q), and the presence of numerous other specific terms in the definition, indicates that the Legislature did not intend for "telecommunications signals" to be included in the definition of "tangible personal property."

Furthermore, as defendant notes, the Legislature explicitly mentions "signals"[18] in its definition of "telecommunications service"[19] under the Use Tax Act[20]—a statute that is "complementary and supplementary" to the Sales Tax Act.[21] *World Book Inc v Dep't of Treasury*, 459 Mich 403, 406; 590 NW2d 293 (1999). The presence of these terms in the Use Tax Act demonstrates that the Legislature is aware of the existence of telecommunications signals and would have chosen to include the phrase "telecommunications signal" in the Sales Tax Act's definition of "tangible personal property" if it had wanted to do so.

Moreover, plaintiffs have presented no convincing evidence that telecommunications signals "can be seen, weighed, measured, felt, or touched, or that is in any other manner perceptible to the senses." They are not visible to the naked eye, nor can they be felt or touched in any discernable way. For this reason, plaintiffs spent a great deal of time at the Court of Claims attempting to show that telecommunications signals can be "weighed" or "measured." Though this might be literally true, it is completely inconsequential, because the terms "weighed" and "measured" must be read in the broader context of the sentence in which they are contained. Both terms are followed by the phrase "in any other manner perceptible to the senses," which indicates that the terms "weighed" and "measured" only apply to the weighing and measuring of an object that is directly "perceptible to the senses." Again, telecommunications signals are not directly "perceptible to the senses." Plaintiffs' interpretation of MCL 205.51a(q) would make the definition of "tangible personal property" completely limitless, because almost any form of matter can be "weighed" or "measured" using the appropriate equipment.

Finally, in instances where it is difficult or impossible to sensually perceive something, and yet the Legislature wished to classify these things as "tangible personal property," the Legislature has made specific provision for them in MCL 205.51a(q). For example, the definition includes "electricity," which is rarely perceptible to the senses, and "prewritten computer software," which requires the aid of an external device (a computer) to perceive.

---

[18] MCL 205.93a(5)(s).

[19] *Id*.

[20] MCL 205.91 *et seq*.

[21] See also *Devonair Enterprises, LLC v Dep't of Treasury*, 297 Mich App 90, 98 n 3; 823 NW2d 328 (2012) ("the definitions set forth in the [Use Tax Act] are consistent with those set forth in the [Sales Tax Act]").

Again, the absence of "telecommunications signal" from the definition—when combined with the other forms of matter specifically mentioned in the definition—indicates that the Legislature had no intention of classifying telecommunications signals as tangible personal property. *Wayne Co*, 267 Mich App at 248.

## V. CONCLUSION

Because telecommunications signals are not "tangible personal property" under MCL 205.51a(q), in that they are neither electricity nor something that can be "seen, weighed, measured, felt, or touched, or that is in any other manner perceptible to the senses," plaintiffs' purchase of electricity is not eligible for the industrial purchasing exemption under MCL 205.54t. The Court of Claims thus properly granted summary disposition to the Department under MCR 2.116(C)(10), and its order is affirmed.


/s/ Henry William Saad
/s/ Peter D. O'Connell
/s/ Christopher M. Murray