*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JIM'S BODY SHOP, INC,

Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

Defendant-Appellee.

FOR PUBLICATION
May 14, 2019
9:15 a.m.

No. 343459
Court of Claims
LC No. 16-000135-MT

Before: SWARTZLE, P.J., and M. J. KELLY and TUKEL, JJ.

PER CURIAM.

In this case involving a use tax deficiency, plaintiff, Jim's Body Shop, Inc., appeals by right the Court of Claims' order granting summary disposition under MCR 2.116(C)(10) in favor of defendant, Michigan Department of Treasury. Because there are no errors warranting reversal, we affirm.

## I. BASIC FACTS

Plaintiff is an auto body repair shop located in Clare, Michigan that is primarily engaged in the business of fixing vehicles that have been involved in collisions for insurance companies. This collision work may require both body and mechanical work, including part repair or replacement, as well as exterior painting and refinishing. A smaller component of plaintiff's business involves routine non-insurance related mechanical repairs, for example, replacing batteries, changing oil, or installing tires.

In July 2015, the Department informed plaintiff that it would be performing a use tax audit of plaintiff's returns for the taxable period between August 1, 2011 and December 31, 2014. Upon initial review of plaintiff's tax records, the Department's auditors determined that plaintiff had not maintained adequate tax records. Plaintiff had not remitted any use tax for the periods at issue and while it had remitted some sales tax, it had not reported that sales tax on its annual returns. Rather, plaintiff's annual returns only reported withholding taxes and the portion

of the returns relating to sales tax, gross sales, and deductions from gross sales, and use tax was left blank. Consequently, while plaintiff had maintained trial balance sheets,[1] the Department was unable to determine from plaintiff's purchase invoices whether use or sales tax had been remitted on these purchases because they could not be related back to plaintiff's annual return. The Department requested documents to ascertain which purchases plaintiff personally consumed (as opposed to purchases it sold and collected sales tax on), but plaintiff could not provide that information.

Ultimately, the Department employed an indirect audit methodology to determine the use tax due on the two types of purchases plaintiff had made during the audit period: capital assets[2] and expenses related to mechanical and body shop repair work. With regard to capital assets, the Department reviewed plaintiff's federal depreciation schedule for the subject tax years and assessed tax for those purchases on the schedule for which no tax had been paid. With respect to plaintiff's use tax liability for expenses, or property plaintiff purchased to perform its mechanical and body shop repair work, the Department reviewed plaintiff's trial balance sheets and identified 11 accounts as relevant to the use tax audit. Yet, the trial balance sheets did not identify whether plaintiff's purchases were for personal consumption or for its retail customers, although they did show that plaintiff's purchases were substantially greater than its retail sales, indicating that certain goods were purchased for plaintiff's consumption.

To determine the goods that plaintiff consumed, and that were thus subject to use tax, the Department, using the information it had available, applied a "one year block" methodology for the 2014 tax year. Mainly, from the 2014 trial balance sheet and the amount of sales tax remitted in 2014, the Department was able to compare the purchases plaintiff made, i.e., the total cost of goods it paid for, to plaintiff's total retail sales, i.e., the price (cost of the good plus markup) charged to the consumer. To determine the purchases plaintiff itself used, the Department subtracted the total amount of retail sales, adjusted to the cost of goods before markup, from the total purchases. This adjustment to retail sales (hereinafter "retail sales at cost") was necessary to insure that plaintiff's purchases for self-consumption were calculated correctly. Notably, because plaintiff initially provided only a single invoice from 2014 reflecting a retail sale, for which the markup was 43 percent, the Department adjusted all of plaintiff's retail sales for each tax year using this 43 percent markup. Ultimately, the Department issued a final assessment for $111,024, including a negligence penalty and interest.

Shortly after the Department issued its final audit determination, plaintiff filed a complaint in the Court of Claims, asserting that it was entitled to cancelation of the assessment due to the Department's "errors." Plaintiff asserted that it was not subject to use tax and that the

---

[1] A "trial balance sheet" is "a bookkeeping or accounting report that lists the balances in each of an organization's general ledger accounts." See < https://www.accountingcoach.com/blog/what-is-a-trial-balance > (accessed April 26, 2019).

[2] "Capital assets" are "long-term asset[s] used in the operation of a business or used to produce goods or services, such as equipment, land, or an industrial plant." *Black's Law Dictionary* (10th ed), p 140.

Department ignored "various" tax exemptions for which plaintiff is eligible. Plaintiff clarified its position in its discovery responses, alleging that the Department erred in calculating a 43 percent markup to determine plaintiff's purchases for personal use because the Department relied on a single purchase invoice, the sample size of which was too small and not representative of plaintiff's sales so as to be extrapolated over the four-year period. Plaintiff further claimed that certain expenses and capital assets were improperly included because they were exempt under the industrial processing exemption, including, as to expenses, paint supplies, sandblaster sand and supplies, and paintless dents equipment and supplies; and, as to capital assets, the Cooltech R143A, Saylor Beal, pressure washer, and carpet extractor. Plaintiff also asserted that the remaining capital assets were not subject to taxation for various reasons, including tools and a foam sprayer that were allegedly part of the realty; a 2008 Gran Prix that plaintiff allegedly never purchased; and a 2003 International 4300 that was purchased for resale.

In support of its position, plaintiff provided additional documentation that it had not provided during the audit and, consequently, the Department reduced plaintiff's tax liability. Plaintiff, for example, provided documents showing that sales tax had been paid on some tire sales and some inventory vehicles and, thus, the Department removed those items from the taxable balance. Plaintiff also produced invoices from three of the 11 expense accounts of interest, including 63 tire invoices, 36 parts invoices, and 2 mechanical invoices. Given this additional information, the Department recalculated the markup by averaging the invoices separately in each of the three accounts and then averaging the average. As a result, the Department adjusted the markup downward to 35 percent, thereby reducing plaintiff's tax liability for expenses.

Eventually the parties filed cross-motions for summary disposition under MCR 2.116(C)(10). The Court of Claims ruled in the Department's favor.

This appeal follows.

## II. SUMMARY DISPOSITION

## A. STANDARD OF REVIEW

Plaintiff argues the trial court erred by granting summary disposition in favor of defendant. This Court reviews de novo a decision of the Court of Claims granting summary disposition. *GMAC LLC v Dep't of Treasury*, 286 Mich App 365, 372; 781 NW2d 310 (2009). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). The Court must view all the evidence submitted by the parties in a light most favorable to the nonmoving party. *Id*. at 120. If no genuine issue of material fact exists and judgment is proper as a matter of law, then the motion was properly granted. *Id*. Questions of statutory interpretation are questions of law that are also reviewed de novo. *GMAC LLC*, 286 Mich App at 372.

B. ANALYSIS

1. PRESUMPTION OF CORRECTNESS

Under MCL 205.104a(1) of the Use Tax Act (UTA), MCL 205.91 *et seq*., a taxpayer in the business of selling tangible personal property has a duty to maintain, for a period of four years, "an accurate and complete beginning and annual inventory and purchase records of additions to inventory, complete daily sales records, receipts, invoices, bills of lading, and all pertinent documents in a form the department requires." In the event the taxpayer fails to comply with this requirement, MCL 205.104a(4) authorizes the Department to determine the taxpayer's tax liability using sources beyond the taxpayer's formal declarations. MCL 205.104a(4) creates a presumption that the resulting assessment is correct and mandates that the audit shall be conducted in accordance with certain standards.

Here, plaintiff failed to remit any use tax, failed to report sales or use taxes on its annual returns, and failed to maintain the required documentation to establish its use tax liability. Consequently, the Department acted within its authority to apply an indirect audit methodology under MCL 205.104a(4) to determine plaintiff's use tax liability for the tax years at issue.

On appeal, plaintiff does not dispute that an indirect methodology was permissible, but instead claims that the resultant assessment was not reasonable under the statute and that the Department, therefore, was not entitled to the presumption that the assessment was correct. Plaintiff's contends that under MCL 205.104a(4) the Department is not entitled to the presumption of correctness absent a showing of reasonableness. In support, plaintiff points to subparagraphs (a) through (d), claiming that because these are mandatory requirements, the Department's failure to comply with them either makes the Department ineligible for the presumption or rebuts the presumption. Plaintiff, however, misconstrues the statute.

When construing statutory language, this Court's goal is to ascertain the Legislature's intent. *Cook v Dep't of Treasury*, 229 Mich App 653, 658-659; 583 NW2d 696 (1998). The best indicator of that intent is the plain language used. *Ferguson v City of Lincoln Park*, 264 Mich App 93, 95-96; 694 NW2d 61 (2004). If the language is clear and unambiguous, it must be applied as written. *Id*. "Further, tax statutes are not to be extended by implication and are to be construed against the taxing authority if an ambiguity exists." *Garfield Mart, Inc v Dep't of Treasury*, 320 Mich App 628, 643; 907 NW2d 880 (2017).

MCL 205.104a(4) provides:

(4) If a taxpayer fails to file a return or to maintain or preserve sufficient records as prescribed in this section, or the department has reason to believe that any records maintained or returns filed are inaccurate or incomplete and that additional taxes are due, the department may assess the amount of the tax due from the taxpayer based on an indirect audit procedure or any other information that is available or that may become available to the department. *That assessment is considered prima facie correct for the purpose of this act and the burden of proof of refuting the assessment is upon the taxpayer.* An indirect audit of a taxpayer under this subsection shall be conducted in accordance with 1941 PA

-4-

122, MCL 205.1 to 205.31, and the standards published by the department under section 21 of 1941 PA 122, MCL 205.21, and *shall* include all of the following elements:

(a) A review of the taxpayer's books and records. The department may use an indirect method to test the accuracy of the taxpayer's books and records.

(b) Both the credibility of the evidence and the reasonableness of the conclusion shall be evaluated before any determination of tax liability is made.

(c) The department may use any method to reconstruct income, deductions, or expenses that is reasonable under the circumstances. The department may use third-party records in the reconstruction.

(d) The department shall investigate all reasonable evidence presented by the taxpayer refuting the computation. [Emphasis added.]

Subsection (4) requires that an assessment derived from an indirect method "is considered prima facie correct" and specifically allocates the "burden of proof of refuting the assessment . . . upon the taxpayer." MCL 205.104a(4). Because the burden of proof refers back to the presumption of correctness, MCL 205.104a(4), by its plain terms, means that the taxpayer has the burden of rebutting the presumption of correctness by showing that the assessment was incorrect. See *By Lo Oil Co v Dep't of Treasury*, 267 Mich App 19, 43; 703 NW2d 822 (2005).[3] The last sentence of subsection (4) requires that an "indirect audit" contain the elements listed in subparagraphs (a) through (d). See MCL 205.104a(4)(a) through (d).

Contrary to plaintiff's interpretation, subparagraphs (a) through (d) do not inform, or otherwise act as a prerequisite to, the Department's entitlement to the presumption of correctness under subsection (4). Subparagraphs (a) through (d) are mandatory procedural requirements in the *performance* of an indirect audit, but the statutory language never indicates that the failure to follow these procedural requirements renders the assessment invalid or otherwise prohibits application of the presumption. Had the Legislature intended the procedural requirements of

---

[3] In *By Lo Oil Co*, 267 Mich App at 43, this Court explained, "[a]lthough plaintiff proffered opinion testimony that the audit method used by the department was not the most reliable and should have been verified with test samples chosen from throughout the period audited, plaintiff failed to offer any evidence that the error rate determined by the 'block sampling method' was actually inaccurate." In other words, challenging the audit method without also proffering evidence showing that the audit is actually incorrect is insufficient to establish, "as a factual matter that any unfairness or injustice occurred." *Id*.

subparagraphs (a) through (d) to be requisites to the presumption of correctness, it would have stated so plainly.[4]

When the statute is read as a whole, it is plain that the burden rests on taxpayers to show that an assessment derived from an indirect method is actually incorrect. Subparagraphs (a) through (d) are only relevant to a taxpayer's burden if the taxpayer can show that as a result of the Department's failure to abide by those procedural requirements, the assessment was not correct: for example, by showing that the Department made a mathematical error or failed to include pertinent information. In this case, plaintiff does not assert that the assessment is incorrect; rather, based on its flawed interpretation of the statute, it claims that the assessment methodology was unreasonable because the Department did not abide by its manual and because a more reasonable method would have resulted in a more accurate assessment. As explained above, under the plain terms of the statute, assertions that an audit procedure was unreasonable, absent a showing that the assessment is incorrect, do not support a conclusion that the assessment is actually incorrect. On this basis alone, plaintiff has failed to meet its burden.

Even assuming that an unreasonable audit method by itself could function to rebut the presumption of correctness, plaintiff has failed to show that the method the Department employed was unreasonable or otherwise demonstrate in any way that the assessment was not correct. Regarding the Department's alleged failure to follow the manual's guidance when using a sampling method, plaintiff points out that small sample sizes are disfavored as are those that are not representative of the entire population. Yet, the Department did not rely on a sampling methodology whereby a "sample" of invoices would be used to determine the markup theoretically applied to all goods sold. Instead, the Department used a block sampling methodology and used the only information plaintiff had made available to it, which renders the manual's guidance on sampling methodology immaterial. Moreover, even assuming the sampling methodology had some relevance, plaintiff cites no authority for the proposition that the Department's alleged failure to follow its own guidance renders the assessment incorrect or constitutes error requiring reversal. In any event, the manual is not binding law, but merely guidance. See *Danse Corp v City of Madison Heights*, 466 Mich 175, 181; 644 NW2d 721 (2002) (indicating that agency manuals not promulgated through formal rulemaking are merely guidance). Further, to hold that a taxpayer may rebut the presumption of correctness by merely showing that the Department did not follow its manual would prohibit, or constrain, the Department from making assessments on available information in situations where taxpayers do not maintain proper records and would greatly erode the state's power to tax. See *Vomvolakis v Dep't of Treasury*, 145 Mich App 238, 245; 377 NW2d 309 (1985).

Relatedly, plaintiff claims that it was unreasonable for the Department to project the cost of goods plaintiff sold at retail by determining an overall markup based on the average of three separately averaged accounts. When it is necessary for the Department to use an indirect

---

[4] We note that plaintiff's understanding of the statute, which requires a showing of reasonableness before the presumption attaches, effectively eviscerates the presumption of validity by shifting the burden onto the Department to show that the assessment is reasonable.

methodology, it has wide discretion in the selection of the method and the taxpayer has no right to choose the method ultimately applied. *By Lo Oil Co*, 267 Mich App at 42. Nevertheless, plaintiff asserts that giving equal weight to the Parts-Mechanical account (average markup of 66 percent based on two invoices) disproportionately affects the markup averages of the other two accounts, both of which had much larger sample sizes. According to plaintiff, the Department should have averaged all the invoices together for a total markup of 13 percent, as opposed to averaging the averages of the accounts. Plaintiff ignores, however, that each of the 11 accounts make up different percentages of plaintiff's business; the significance of this is that by simply averaging all the invoices together, undue weight would be given to the tire account (because plaintiff submitted the most invoices for that account), which only makes up 4 percent of plaintiff's business. By averaging the averages, defendant gave equal weight to each of the accounts for which invoices were submitted. While defendant's method does not account for the proportion of business activity in each account (primarily because plaintiff did not produce invoices for each account), plaintiff's proposed method is not any more reliable than the method applied, given that a taxpayer could manipulate the markup by producing a greater number of invoices favorable to it. In any case, that an audit method other than the one employed may have been more reasonable or reliable than the one actually used is insufficient to rebut the presumption of correctness without a showing that the assessment is actually incorrect. *Id*. at 42-43.

In sum, plaintiff failed to rebut the presumption that the assessment is prima facie correct, so the Court of Claims did not err by granting summary disposition on this basis.

## 2. INDUSTRIAL-PROCESSING EXEMPTION

Plaintiff argues that the industrial-processing exemption should be applied in this case. Property sold to an "industrial processor" that is used or consumed in "industrial processing" is exempt from taxation under the UTA. MCL 205.94o(1)(a). The Act defines "industrial processor" as:

> a person who performs the activity of converting or conditioning tangible personal property for ultimate sale at retail or use in the manufacturing of a product to be ultimately sold at retail or affixed to and made a structural part of real estate located in another state. [MCL 205.94o(7)(b).]

The Act further defines "industrial processing" as:

> the activity of converting or conditioning tangible personal property by changing the form, composition, quality, combination, or character of the property for ultimate sale at retail or for use in the manufacturing of a product to be ultimately sold at retail or affixed to and made a structural part of real estate located in another state. Industrial processing begins when tangible personal property begins movement from raw materials storage to begin industrial processing and ends when finished goods first come to rest in finished goods inventory storage. [MCL 205.94o(7)(a).]

Plaintiff prepares damaged or new auto body parts by sandblasting and fixing dents as necessary, and preparing and applying a primer. After the primer is baked, plaintiff mixes a combination of powdered tints and other liquid chemicals, and applies the resultant paint color to the auto body part using an air gun. After the paint has baked, plaintiff finishes the process by mixing more chemicals to create a clear coat, which is again applied to the auto part using an air gun. Plainly, plaintiff's auto body collision repair work is an activity that alters tangible personal property (the paint tints and other chemicals) by changing its form and character. See MCL 205.94o(7)(a).

Notwithstanding plaintiff's activities, plaintiff is not an industrial processor engaged in industrial processing. This is because, by definition, an industrial processor and industrial processing require an "ultimate sale at retail." The General Sales Tax Act, MCL 205.51 *et seq.*, defines "sale at retail" as "a sale, lease, or rental of *tangible personal property* for any purpose other than for resale, sublease, or subrent." MCL 205.51(1)(b). It is significant that the Legislature qualified the necessary activity with the phrase "for ultimate sale at retail" because it excludes from the industrial processing exemption persons involved in the sale of services. See *MidAmerican Energy Co v Dep't of Treasury*, 308 Mich App 362, 364-365; 863 NW2d 387 (2014) (recognizing that under Michigan's General Sales Tax Act's analogous industrial processing exemption, the exemption is not available to persons selling something other than tangible personal property).[5]

Plaintiff's auto-body work involves both the sale of tangible personal property, i.e., new paint on a new or pre-existing auto body part, and the sale of a service, i.e., the repair of auto body parts. For purposes of the exemption, whether a "sale at retail" has occurred when a mixed transaction is at issue depends on whether the transfer of tangible personal property is merely incidental to the service provided, in which case the transaction is for services and not a "sale at retail." To determine whether a "sale at retail" has occurred, courts applying the General Sales Tax Act have used the "incidental to service test" and have objectively examined the totality of the transaction, considering:

> what the buyer sought as the object of the transaction, what the seller or service provider is in the business of doing, whether the goods were provided as a retail enterprise with a profit-making motive, whether the tangible goods were available for sale without the service, the extent to which intangible services have contributed to the value of the physical item that is transferred, and any other

---

[5] Notably, prior to the amendment that added MCL 205.94(o) in 1999, the Legislature had recognized that the exemption could apply to those involved in the sale of services, so long as those services changed or altered the character of tangible personal property to place it in a different form. See *Beckman Prod Servs v Dep't of Treasury*, 202 Mich App 342, 344-345; 508 NW2d 178 (1993). The 1999 amendment, which added the language requiring that industrial processors effect a change in tangible personal property for *ultimate sale at retail*, reflects a conscious decision to narrow the applicability of the exemption.

factors relevant to the particular transaction. [*Catalina Marketing Sales Corp v Dep't of Treasury*, 470 Mich 13, 26; 678 NW2d 619 (2004).[6]]

Plaintiff is primarily engaged in the business of providing auto body repairs to vehicles that have been in a collision. With respect to this aspect of plaintiff's business, customers sought the auto body repairs of their damaged vehicles as the object of the transaction. The paint and supplies that plaintiff used to make these repairs were not made available for sale without the service. And, this tangible personal property, the unmixed paint, other chemicals, and supplies used to prepare and finish the repair paint job, would have virtually no value to the customer without the service of applying those components to the vehicle so that the auto body parts look like new. Consequently, the sale of tangible personal property, i.e., new paint on a new or pre-existing auto body part, is incidental to the sale of a service, i.e., the repair of auto body parts. Because plaintiff makes no sales at retail, given that its transactions are for the sale of a service, it is not an "industrial processor" engaged in "industrial processing" and it is not eligible for the industrial processing exemption.

Plaintiff disagrees with this conclusion, claiming that the Court of Claims erred by focusing its analysis solely on the fact that the paints were not sold separately at retail, but in doing so, plaintiff takes the Court of Claims' statement in isolation. The court's analysis, however, focused on the totality of the transaction under the incidental services test. Moreover, the evidence provided by plaintiff does not support a finding that plaintiff sold paints alone. Instead, it is clear that the paints were sold in conjunction with the repair service. Plaintiff does not otherwise explain how it is engaged in retail sales, as opposed to the sale of repair service, other than relying on an unpublished case, which is not binding on this Court, and which we do not find persuasive.[7] See MCR 7.215(C)(1).

### 3. CAPITAL ASSETS

Plaintiff argues that the Court of Claims misapplied the standard for reviewing a summary disposition motion under MCR 2.116(C)(10) with regard to certain captial assets. Plaintiff claims that the court failed to view the evidence in the light most favorable to plaintiff and wrongly ignored James Paetschow's[8] testimony that the assets were not subject to tax. Once the moving party meets its burden of supporting its motion under MCR 2.116(C)(10) with documentary evidence, the burden shifts to the nonmoving party to set forth specific facts showing that a genuine issue of disputed fact exists. *Smith v Globe Life Ins Co*, 460 Mich 446, 455; 597 NW2d 28 (1999). In this regard, the nonmoving party may not rely on mere allegations

---

[6] Although the Michigan Supreme Court articulated this test in a case involving the GSTA, this Court has previously applied the incidental to services test in the context of the UTA. *Auto-Owners Ins Co v Dep't of Treasury*, 313 Mich App 56, 79 n 4; 880 NW2d 337 (2015).

[7] The decision plaintiff relies on is *Central Mich Cementing Servs, LLC v Dep't of Treasury*, unpublished per curiam opinion of the Court of Appeals, issued December 8, 2015 (Docket No. 323405).

[8] Paetschow is plaintiff's owner and president.

or denials in pleadings, but must go beyond the pleadings [and present documentary evidence] to set forth specific facts showing that a genuine issue of material fact exists." *Quinto v Cross & Peters Co*, 451 Mich 358, 362-363; 547 NW2d 314 (1996).

Plaintiff's federal depreciation schedule listed the captial assets in dispute; because plaintiff was unable to produce an invoice showing that sales tax had been paid on these items, the Department included those items in the assessment. Contrary to plaintiff's argument on appeal, it failed to produce the required documentary evidence necessasry to establish a genuine issue of material fact to avoid summary disposition. Paetschow testified that the tools and the foam sprayer were attached to the realty, but plaintiff did not present any invoices or documentary proof. He also testifed that plaintiff purchased a Grand Prix, but could not produce an invoice; he later attested contradictorily that plaintiff did not purchase the Grand Prix. And, despite claiming the International 2300 RO on the depreciation schedule, Paetschow testified that it was purchased for resale and kept as inventory but he did not provide any documentary evidence to support this assertion. Having reviewed the record, it is plain that all of Paetschow's assertions are nothing more than unsubtantiated assertions insufficient to create a question of fact for trial. See *Quinto*, 451 Mich at 362-363. The Court of Claims did not err by recognizing that plaintiff had failed to meet its burden of proof.

## 4. NEGLIGENCE PENALTY

Finally, plaintiff argues that the negligence penalty should be waived, given that plaintiff was arguably eligible for the industrial processing exemption. MCL 205.23(3) requires the imposition of a 10 percent penalty in the event that a tax deficiency is due to the taxpayer's negligence. Negligence, for purposes of imposing such a penalty, "is the lack of due care in failing to do what a reasonable and ordinarily prudent person would have done under the particular circumstances." Mich Admin Code, R 205.1012. Whether a taxapyer was negligenct is determined on a case-by-case basis, but the "standard for determing negligence is whether the taxpayer exercised ordinary care and prudence in preparing and filing a return and paying the applicable tax in accordance with the statute." *Id*. Thus, if the taxpayer "demonstrates to the satisfaction of the department that the deficiency . . . was due to reasonable cause, the department shall waive the penalty." MCL 205.23(3).

Plaintiff did not remit any use taxes during the period and left the portion of its returns relating to sales and use taxes blank. Paetschow testified that he was not aware of plaintiff's tax reporting procedures and did not know whether plaintiff had filed sales or use tax returns for the years in question. Further, plaintiff's claim that it believed it was entitled to the industrial processing exemption is belied by the fact that it did not raise this exemption until litigation and, in any case, ordinary care would have compelled plaintiff to file returns despite such a belief. These circumstances show that plaintiff failed to exercise ordinary care. The Court of Claims did not err by upholding the negligence penalty.

Affirmed.

/s/ Brock A. Swartzle
/s/ Michael J. Kelly
/s/ Jonathan Tukel